Norma J. SMITH and L. G. Barr, Appellants,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, a Corporation, Respondent.

No. 45034.

Supreme Court of Missouri,
Division No. 1.

March 11, 1957.

Motion for Rehearing or to Transfer to Court en Banc and to Remand for New Trial Denied April 8, 1957.

 

Clarence C. Chilcott, Kansas City, for appellants.

Henry G. Eager, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, for respondent. Ralph E. Fain, Houston, Tex., of counsel.

HOLMAN, Commissioner.

Lieutenant Colonel Merrill E. Smith was killed on April 8, 1952, in the crash of a U. S. A. F. B-25 aircraft. This action was instituted by his widow, Norma J. Smith, the beneficiary, and her assignee, L. G. Barr, to recover from the defendant, The Prudential Insurance Company of America, the amount they allege to be due them on a policy of life insurance issued January 15, 1950. It was admitted that if plaintiffs' theory of recovery was correct they should recover $10,855. The jury returned a verdict for that amount, together with $1,953 interest, a total of $12,808. In accordance with its trial contention defendant filed a motion to set aside the verdict and enter a judgment for plaintiff for a limited benefit in the amount of $191.17, with interest from date of death, in accordance with its motion for directed verdict. The trial court sustained that motion and entered a judgment for $227.49. Defendant's alternative motion for a new trial was overruled. Plaintiffs have duly appealed and seek to have the judgment of $12,808 reinstated. Since Barr is merely a nominal party and Mrs. Smith is the real party in interest, we will hereafter use the singular plaintiff in referring to claimants.

In the situation presented we will view the evidence, and all legitimate inferences to be drawn therefrom, in the light most favorable to plaintiff. The testimony of defendant's witnesses (unless it aids plaintiff) will be disregarded.

The vital, contested issue in this case is well defined. Defendant concedes that plaintiff is entitled to recover $10,855 in benefits under the policy unless the amount is reduced and limited by the provisions of

the aviation clause attached to and made a part of the policy. The portion of that clause with which we are here concerned is as follows: "Notwithstanding anything in this Policy to the contrary, it is hereby provided that the liability of the Company shall be the limited benefit defined below if the Insured dies as a direct or indirect result of travel or flight in or descent from any kind of aircraft used anywhere for any purpose, if the Insured is a pilot, officer or member of the crew of such aircraft, or is operating or assisting in the operation of such aircraft, or is giving or receiving any kind of training or instruction, or has any duties whatsoever aboard such aircraft while in flight." The application and aviation questionnaire attached to the policy disclose that the insured understood and, in fact, directed that the policy be issued with an "aviation exclusion rider" which apparently is the clause just quoted. There is no controversy about the fact that Colonel Smith was killed when a plane, in which he was riding, ran into a mountain and crashed. If it may be said, as a matter of law, that at that time he was "a pilot, officer or member of the crew of such aircraft," or was "operating or assisting in the operation" thereof, or had "any duties whatsoever aboard such aircraft," the action of the trial court in restricting recovery to the limited benefit was correct. If, under the evidence, that issue was properly for the jury, the judgment entered on the jury verdict should be reinstated.

In April, 1952, Colonel Smith was stationed at Randolph Field, Texas, as commandant of students. He was an administrative officer and was not a flying instructor. He and his wife had leased their home in Kansas City, Missouri, but the lease expired on March 31, 1952. Early in April, Smith called his agent, Howard Barnum, and advised that he planned to fly to Kansas City and discuss with him certain matters concerning the property.

On April 7, 1952, Colonel Smith left Randolph Field on a B–25 with nine other Air Force personnel destined for Lowry Field, Colorado, for a conference. They were to go by way of Fairfax Field, Kansas City, Kansas. Smith was the highest ranking officer on the plane and was designated in the temporary duty order (T. Y. D.) and in the aircraft clearance form (D. D. 175) as the copilot.

Upon arrival in Kansas City, Colonel Smith met a friend, Roy Snedden, and spent the afternoon and evening with him. Smith advised Snedden that he had come up to see about his house and if he could complete his business the next morning he would play golf with him the following afternoon. He indicated that it was not required that he make the trip to Denver but that the plane could pick him up on the return trip. However, he contacted Mr. Barnum early the next morning, completed his business quickly, and apparently decided to go on to Lowry Field. Before leaving Fairfax, the pilot filed another Form 175 which listed the same crew and passengers as had flown on the first leg of the flight, except one additional passenger, A/2C Dahl, who was apparently "hitching" a ride.

Sometime after 10 a. m., the pilot contacted the radio tower at Lowry Field, reporting that the plane was 25 miles east of Denver; was in trouble; that the sky was overcast and permission was requested to change from Visual Flight Rules to Instrument Flight Rules. At that time a muffled sound was heard and contact with the plane was lost. Two days later the wreckage was discovered on a mountain about 25 miles west of Denver. A flight surgeon, who went to the scene, testified. He stated that the plane had cut a fairly long swath through the trees before it hit the mountain and exploded; that with the exception of a part of the tail section the plane had almost completely disintegrated; all of the persons aboard had been killed and all of the bodies, except one, where thrown clear of the plane and were mangled and torn to pieces; that they were able to identify the body of each man listed; that about half of the bodies were near the top of the swath but the body

of Colonel Smith was not in that group. No log, flight plan, or other records of the plane were found by the witness. It is apparent that there was no way of ascertaining, from an examination of the scene, the position of Colonel Smith in the plane or of any other occupant thereof at the time of the crash.

The minimum crew of a B–25 consists of a pilot, copilot, and engineer. The crew members fly in the cockpit and the passengers are in the rear compartment and it is very difficult, during flight, for a person to get from one compartment to the other. The copilot sits to the right of the pilot and has definite and important duties to perform throughout a flight. It is conceded that the person designated in the T. Y. D. order and in the flight clearance Form 175 as copilot would be the official copilot "order-wise." However, there was evidence to the effect that if there were other rated pilots aboard, it was the usual practice and custom, particularly in a flight involving more than one leg, to permit one other than the assigned copilot to act as copilot during a portion of the flight. The foregoing will indicate the conflicting contentions of the parties. Plaintiff asserts that the burden was on the defendant to show that the insured, at the time of his death, was actually engaged in performing the duties of the copilot. Defendant takes the contrary position that the aviation clause becomes fully operative, as a matter of law, upon proof that insured was physically present on the aircraft under orders and a flight plan wherein he was named as the copilot.

Since all persons aboard the plane were killed, and the log destroyed, it would seem that it would be impossible to obtain any proof as to the person actually sitting in the copilot's seat at the time of this unfortunate catastrophe. In this situation, the plaintiff offered considerable evidence as to various customs and standard operating practices in an effort to show that the insured might not have actually been performing the duties of the copilot at that time.

There was evidence as to standard operating practices indicating that if the highest ranking officer is "checked out" he will be designated as the pilot; that if he is not "checked out" such an officer will be named in the orders as copilot; the phrase "checked out" means that the officer "is current, proficient and is able to handle the aircraft"; that a designated copilot not at the controls would have no duties; that a pilot or copilot must actually perform their duties in the operation of the plane for a minimum of four hours a month in order to get extra "flight pay"; that the record as to "flight time" is not taken from T. Y. D. orders or Form 175, but from an actual performance record which is made up at the end of each flight on Form 1 and transferred monthly to Form 5; that if insured had not desired to go from Fairfax to Lowry Field, he could have obtained permission from his commanding officer before leaving Randolph Field, or could have telephoned that officer from Kansas City and received verbal permission.

There was evidence that Captain Ellenberg, listed as a passenger on the flight, was an instructor pilot, but the witness did not know whether he was current or "checked out" as to a B–25. There was no evidence as to the qualifications of any other passengers aboard to act as pilot or copilot. Although it may be inferred that Colonel Smith was not "checked out" as to this plane, it was conceded that he would not have been assigned as copilot unless he had been "qualified in all ways to act as copilot aboard that craft on that flight." Plaintiff testified that she received Colonel Smith's pay for April, 1952, and that no flight pay was included.

Plaintiff here contends that the trial court erred in ruling as a matter of law that insured, at the time of his death, was engaged in activities that restricted the liability of the defendant to the limited benefit provided for in the aviation clause. More specifically, it is said that, since plaintiff's prima facie case was admitted, the burden was on defendant to prove its affirmative de-

fense, i. e., the applicability of the restrictive provisions of the aviation clause, and as all evidence tending to establish that defense was contradicted and explained by other evidence, the issue was one to be determined by the jury.

We agree that it was defendant's burden to prove its affirmative defense, and furthermore, it is "the general rule in such circumstances that the plaintiff's case cannot be taken from the jury, for he has the right to have the jury pass on the credibility of the defendant's witnesses and the weight of their testimony, though uncontroverted. Peterson v. C[hicago] & A. R. Co., 265 Mo. 462, 479, 480, 178 S.W. 182. But the rule has its exceptions. When the proof is documentary, or the defendant relies on the plaintiff's own evidential showing (or evidence which the plaintiff admits to be true), and the reasonable inferences therefrom all point one way, there is no issue of fact to be submitted to the jury." Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 101, 57 A.L.R. 615. As we have heretofore indicated, the facts we consider decisive of this case were developed during the presentation of plaintiff's evidence and are undisputed. These facts are that Colonel Smith was under temporary duty orders to proceed from Randolph Field to Fairfax Field and then to Lowry Field, Denver, Colorado, for the purpose of acting as copilot on "airlift of personnel for a conference." That these orders had not been countermanded appears from the fact that the required Aircraft Clearance Form filed by the pilot immediately preceding the take-off from Fairfax Field listed the insured as copilot. It is conceded that at the time of the crash insured was aboard the plane as the only official copilot "orderwise." Since these facts appear from plaintiff's evidence, and also from the documentary proof of defendant, we rule that the trial court did not err in determining the issue as a matter of law.

The aviation clause under consideration is clear, comprehensive, and needs no "construction" in order to determine its meaning. We observe generally that it obviously was intended that the provision would exclude from full coverage any insured dying as a result of travel in any aircraft unless he was a mere passenger. There is no dispute but that it applied to a "member of the crew" and that the copilot was such a member. Also, as stated, insured was the only officially assigned copilot aboard this plane and was qualified to act as such on that flight. It therefore becomes apparent that plaintiff was entitled to recover the limited benefit only unless she is correct in her contention that defendant had the burden of establishing that insured was actually at the controls and performing the copilot's duties at the time of the casualty.

We are unable to agree with the position of plaintiff in the respect just noted. It may be (which we need not and do not decide) that if there had been evidence that the insured was not actually performing the duties of a copilot on this leg of the flight, an issue would have arisen as to the applicability of the aviation clause. However, when it developed, in the manner heretofore described, that Colonel Smith was the only officially assigned copilot on the aircraft, and no substantial evidence was introduced tending to show that he was not, in fact, the copilot, defendant's affirmative defense was established by plaintiff's evidence and defendant became entitled to a directed verdict.

We have already given in some detail the evidence of plaintiff as to the various customs and operating practices which, it is contended, would create an inference that insured was not acting as copilot at the time in question. Perhaps the more important of these is the custom whereby the assigned copilot would, at times, permit another qualified officer to take over the copilot's seat and perform his duties. Also, there was evidence to indicate that when a designated copilot is not at the controls he would have no duties.

As previously indicated, we have the view that the evidence as to the various customs and operating practices in the Air Force was not sufficient to constitute substantial evidence from which it could be inferred that insured was not acting as copilot at the time in question. The most that can be said for that evidence is that it indicates the possibility that he might not have been so acting. To permit a jury, on the basis of that possibility, to find (in the face of the written orders and flight plan) that insured was not the copilot at the time of the crash, would be to approve a verdict based upon sheer conjecture and speculation.

Plaintiff vigorously contends that the fact she received no "flight pay" for Colonel Smith's services in April, 1952, is evidence that he did not actually act as copilot for four hours on this flight. There is no merit in this contention. The log was destroyed and hence Form 1, from which "flight pay" is computed, was never prepared and filed. Since all aboard the aircraft were killed, there was no other source from which to obtain the actual performance record. Therefore, it would appear that there was no basis for allowing "flight pay" so far as this particular flight was concerned.

Plaintiff also argues that the evidence indicates that insured was not, in fact, a member of the crew but was merely "hitching" a ride to Kansas City to attend to personal business. We do not agree. It is true that he desired to confer with his agent in Kansas City and did so. There is also evidence that he considered making arrangements to stay in Kansas City until the plane returned from Denver. However, the fact is that he did proceed on the flight to Lowry Field in accordance with his orders. The occurrences in Kansas City do not create an inference that insured was not the copilot on the second leg of the flight.

No case has been cited (nor have we found one) which involves the same policy provision in connection with a factual situation like the one here presented. However, in a general way, we think our decision herein is supported to some extent by the following cases: Wendorff v. Missouri State Life Ins. Co., supra; State ex rel. Mutual Life Ins. Co. of New York v. Shain, 344 Mo. 276, 126 S.W.2d 181; Le Breton v. Penn Mut. Life Ins. Co., 223 La. 984, 67 So.2d 565, 45 A.L.R.2d 446; Smith v. Metropolitan Life Ins. Co., 29 N.J.Super. 478, 102 A.2d 797. The cases cited by plaintiff may each be distinguished from the instant case because of the policy provision or factual situation involved and hence do not support her contentions herein.

Finally, plaintiff contends that even if the defendant prevails, and plaintiff is restricted to the recovery of the limited benefit, the judgment should be reversed and cause remanded for correction of the amount thereof. The only evidence as to the amount payable under the aviation clause was given by Philip Finegan, an actuarial director for defendant. He stated that the amount was $191.17. The judgment entered was for that amount, plus interest from date of death, a total of $227.49. Plaintiff says that according to defendant's theory the amount should have been $232.37. We assume that refers to the fact that defendant, in its answer, alleged that the amount was $196.37 and tendered payment (and filed a written offer to permit judgment) in that amount. We note, however, that the allegation and offer did not include an additional amount for interest. Obviously the offer was not accepted. Under those circumstances, we think the court did not err in entering judgment for the correct amount payable, as shown by the undisputed evidence. In this connection we observe that the amount of the questioned judgment exceeded the sum defendant had alleged was payable under the provisions of the aviation clause.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

**442**

## PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.