VANDERLAAN v. EDUCATORS MUTUAL
INSURANCE COMPANY.

1. INSURANCE — AIR TRAVEL — PASSENGER — OPERATOR OF PLANE — QUESTION OF FACT.
    Insurer under accident insurance policy covering insured in air travel only while "traveling as a passenger" but excluding coverage if he were "operating or serving as a member of the crew" was not entitled to directed verdict on ground that insured who owned the dual-control plane in which he was killed had participated as a pilot at times on the trip but evidence presented a question of fact as to whether he or another person who was an experienced pilot and air force flight instructor and who had operated the plane more than half of the time, was operating the plane at the time of the accident.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 3, 4] 29 Am Jur, Insurance §§ 968, 969.
    Who is member of crew within aeronautics clause of life or accident policy. 14 ALR2d 1363, 17 ALR2d 1041, 45 ALR2d 454.

2. Same—Air Travel—Civil Aeronautics Manual—Evidence.

It was not material error for trial court to refuse to receive into evidence a portion of the civil aeronautics manual, containing definitions of the terms "pilot," "copilot," "pilot in command," and "passenger," in beneficiary's action under accident insurance policy affording a coverage in air travel only on a passenger in aircraft, where policy made no reference to such manual and court properly instructed jury as to definitions of terms contained in the relevant policy clauses.

3. Same—Special Questions—Status of Insured at Time of Airplane Crash.

It was not error for trial court to refuse to give 2 special questions to jury in beneficiary's action under accident insurance policy covering only passengers, not operators, in aircraft, where such questions embraced assured's status on the trip or on the particular flight in question and not what he was doing at the time of or just before the crash of the dual-control plane in which an experienced pilot and air force flight instructor was at other controls, the 2 special questions which were given having covered the controlling issue as to whether insured was a passenger or serving as a member of the crew at the time of the crash.

4. Same—Instructions—Construction of Accident Policy.

The trial court properly fulfilled his duty in beneficiary's action under accident insurance policy in construing terms of policy by instructing jury that result would depend upon what they found the insured was or was not doing immediately before and at the time of the crash of the dual-control plane which resulted in the death of both the insured and the man at the other controls who was an experienced pilot and air force flight instructor who had operated the airplane more than half the time on the extended trip.

Appeal from Muskegon; Dehnke (Herman), J., presiding. Submitted April 7, 1959. (Docket No. 14, Calendar No. 47,871.) Decided June 5, 1959.

Action by Jane G. VanderLaan against Educators Mutual Insurance Company, a foreign corporation, for accidental death benefits claimed due when husband died in airplane crash. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Hathaway, Latimer, Clink & Robb (H. Winston Hathaway,* of counsel), for plaintiff.

*Poppen, Street & Sorensen (Harold M. Street,* of counsel), for defendant.

DETHMERS, C. J. Defendant appeals from judgment for plaintiff entered on special verdict rendered by a jury's answers to 2 written questions submitted by the court. Suit is on the accidental death benefit provisions of an insurance policy, issued by defendant, naming Dr. John VanderLaan as assured and plaintiff as beneficiary. The assured was accidentally killed in an airplane crash. Pertinent excerpts from the policy are:

"Section 4. Limited air travel benefits.

"The master policy, and the individual certificates issued hereunder, provide benefits for accidental bodily injury sustained during aerial travel, but only while insured is traveling * * *

"(b) * * * as a passenger in a powered civil aircraft * * *

"Section 6. Exclusions and limitations

"This certificate does not cover loss, fatal or nonfatal, resulting wholly or partly, directly or indirectly: (a) while operating, * * * or serving as a member of the crew of any aircraft; or * * * from (c) injuries sustained in consequence of riding in any vehicle for aerial travel, * * * except as provided in section 4."

The assured was a licensed pilot. He owned an airplane. It had dual controls so that either the person in the right or left front seat could operate it. One man could operate it alone without need for a copilot or crew. The assured, 4 other doctors and 3 laymen planned to fly to Canada on a fishing trip. One of the laymen was William Sutton, an experienced World War II pilot and air force flight

instructor. Assured's plane and one owned by one of the other doctors were to be used. Because assured had suffered a heart ailment which had necessitated his leaving his medical practice, he was not certain that he could go, but arranged that, if he did not, his plane would, nevertheless, be used by the party with Sutton piloting; and it was understood by the members of the party that, even if assured did go, Sutton would fly it. It was common practice, when Sutton was in that plane, for him to fly it.

The 8 men went on the trip, with 4 in each plane. Assured occupied the left front seat of his plane, known as the pilot's seat, and Sutton the right front seat, in which an instructor ordinarily rides. Both participated in flying the plane. Sutton flew it more than half of the time. All flight plans filed with authorities listed assured as pilot of his plane. He and Sutton and the 2 who operated the other plane joined in preflight planning from time to time on the journey. Assured handled most of the radio communications on his plane, checked on weather reports, consulted maps and obtained clearance for take offs from the fields where they landed. Although it was known that assured did some of the flying on the trip, it was not possible for the passengers to see which of the 2 in the front seats was actually doing the flying at a given time. Their destination was 3,500 miles from home and required about 2-days flight each way. Stops were made every 3 or 4 hours. One poor landing was made because both assured and Sutton tried to operate the controls at the same time.

After fishing for some days the party started on the return flight. En route, the planes landed at a Canadian airport for Canadian customs clearance. The testimony indicates that on the leg of the journey immediately preceding that landing Sutton had been

doing the flying. Weather conditions were unfavorable. Before deciding to proceed, weather reports from the next contemplated stop were awaited. After receipt of such reports, indicating improved weather conditions there, Sutton told the assured, in response to the latter's inquiry, that he would be willing to fly on. Sutton, the 2 operating the other plane, and the assured, referred to by one of the doctors as the 4 pilots, decided to go. The other plane flew in the lead position. They lost sight of each other because of a mist, at which time Sutton said he was going to take the plane to the left, which was the preconceived plan to avoid traveling in the same flight plan as the other plane. The planes encountered scattered clouds. Word came by radio from the other plane that they had decided to climb over the clouds. Assured replied by radio, "All right, we will follow you up, and we will be right with you." Shortly thereafter assured's plane crashed, for reasons unknown. Assured and Sutton were killed. The 2 doctor passengers sitting in the back seats survived. They do not know whether the assured or Sutton, or both of them, were handling the controls of the plane just prior to and at the time of the crash. The doctor piloting the lead plane was of the impression that Sutton was doing the flying because assured's plane, in following the first, flew in a position off its left side so that the accupant of the right front seat of the assured's plane (Sutton) could see the other plane.

Defendant's brief states as the first question involved the following:

"Where, in a suit to recover on an insurance policy which afforded air travel benefits only while the insured was 'traveling as a passenger' and excludes while 'operating or serving as a member of the crew,' the proofs show the insured occupied the pilot's seat, and another pilot occupied right front seat of the

1959] VanderLaan v. Educators Ins. Co. 323

insured's private plane; all witnesses testified both participated in the operation thereof, and the official flight plan filed listed the insured as pilot, should the court have directed a verdict for defendant?"

Defendant answers that it was entitled to a directed verdict on the grounds that (1) assured was not a passenger and (2) he was serving as a member of the crew. Defendant takes its definition of "passenger" from 2 CJS, Aerial Navigation, § 2, p 902, as "any person riding in an aircraft, but having no part in its operation." Defendant then points to the above outlined acts of assured on the trip as conclusive of his having had a part in the plane's operation and urges that he was, therefore, not a passenger, and that, accordingly, he was not included in the coverage of section 4 of the policy, limited to passengers. Defendant contends that, on the contrary, assured came within the exclusionary provisions of section 6 of the policy because, in the course of the trip, he operated the plane at times and at other times at least participated in its operation, as shown by some of the above-stated facts, and was, therefore, serving as a member of the crew.

Plaintiff directs attention to items of proof, above mentioned, from which a reasonable inference might be drawn that Sutton, not the assured, was operating the plane when it crashed. This brings into focus the fundamental point of cleavage between the parties. Defendant says that the question of assured's "traveling as a passenger" or "serving as a member of the crew" is one of his status on the plane during the entire trip. Plaintiff, as did the trial court, views the question as being one of what the assured was or was not doing just before and at the time of the crash.

In determining the meaning of "traveling as a passenger," as used in the policy, we must look to all of its related provisions. One who is traveling as a pas-

senger is included within the coverage of the policy, but one serving as a member of the crew of the plane is excluded. Read together, the conditions of inclusion under section 4 and of exclusion under section 6 seem mutually exclusive, yet all-inclusive. No other conclusion can be drawn than that an occupant of an aircraft in flight who is not excluded under section 6 for "operating or serving" or other reasons therein stated, is "traveling as a passenger" within the meaning and coverage of section 4. There seems no room for middle ground, where he could be said to be doing neither. We look to section 6, therefore, in ascertaining the meaning of "traveling as a passenger." We note that the words therein "operating" or "serving as a member of the crew," as is also true of the term "traveling as a passenger" in section 4, are not words denoting status, but action. The exclusion applies "while operating * * * or serving." Nothing in the language of section 6 permits holding that the exclusion applies while assured is not so "operating" or "serving" merely because of an alleged status acquired by his earlier having engaged in "operating" or "serving." At the time of the crash he either was or was not operating the plane or performing some other service of a crew member. If he was doing so, he was not a passenger and was excluded from coverage. If he was not doing so, he was, even under defendant's above-quoted CJS definition, a passenger and within the coverage provisions. In the cases of *Le Breton* v. *Penn Mutual Life Insurance Co.*, 223 La 984 (67 So2d 565, 45 ALR2d 446, 1953 Av 459, 4 CCH Av 17,116), which defendant cites in this connection, and *Smith* v. *Prudential Insurance Company of America* (Mo), 300 SW2d 435 (1957 Av 450, 5 CCH Av 17,287), heavily relied on by defendant, the exclusion provisions of the policies in question related to one who "is a member of the crew" and, further, in the *Smith Case* (p 438) to one who has any duties

aboard while in flight, as distinguished from "serving as a member of the crew" as in the instant case. Even so, in the *Smith Case* the court (p 440) recognized that, if, contrary to the documentary evidence that he was the copilot, there had been evidence that the assured was not actually performing duties of a copilot on the leg of the flight involved, an issue might have arisen as to the applicability of the exclusion clause, but the court said there was nothing in the record permitting other than speculation on that subject and, hence, no question for the jury. Accordingly, the court upheld a judgment *non obstante veredicto* for the defendant. In the instant case, the situation is otherwise. There is testimony from which a reasonable inference might be drawn that the assured was not at the controls of the plane or serving as a member of the crew when the crash occurred and other testimony from which the opposite inference might be drawn. This gave rise to a question of fact for the jury. This was the controlling question in the case. Accordingly, defendant was not entitled to a directed verdict.

Defendant charges error on the court's refusal to receive into evidence a portion of the "Civil Aeronautics Manual" containing definitions of the terms "to pilot," "copilot," "pilot in command," and "passenger." The court excluded this on the ground that no reference thereto is made in the policy. This we think well-founded. Furthermore, defendant says that the exclusion, although erroneous, would not have amounted to material error if the court had properly instructed the jury as to the definitions of terms contained in the relevant policy clauses. As we shall later point out, we think the court, in effect, did so, thus leaving no occasion for admission of the proposed source of definitions.

Next, defendant assigns error in that the court submitted but 2 special questions to the jury after

defendant had submitted 4 to the court. The 2 questions submitted by the court to the jury and the jury's answers follow:

"1. Does the proponderance of the testimony show that the accident occurred while Dr. VanderLaan was either operating the plane or serving as a member of the crew?

"Answer: No.

"2. Does the preponderance of the testimony show that at the time of the accident Dr. VanderLaan was riding in the plane as a passenger?

"Answer: Yes."

Defendant concedes that these questions might be considered as covering 2 of its questions, but complains that the substance of its other 2 questions was not thereby given. These 2 were:

"1. Was Dr. VanderLaan participating in the flight of the plane, in either the capacity of pilot or copilot, on the flight from Penticton?

"3. Was Dr. VanderLaan operating the plane jointly with Mr. Sutton on the flight from Penticton?"

These 2 questions were predicated, of course, on defendant's theory that the controlling question in the case is that of assured's status on the trip or on the particular flight in question, not what he was doing at the time of or just before the crash. Our view on this matter being as already expressed, we discern no error in the court's refusal to submit the 2 questions requested. This is all the more so because the questions would have tended to inject into the jury's deliberations factors not expressly included in the policy's exclusionary provisions, namely, whether the assured was *"participating"* in the flight of the plane or operating the plane *"jointly"* with Mr. Sutton at any time on the flight. The questions submitted by the court to the jury elicited answers to the

2 issues made pertinent by the policy's terms, rebutting the 2 contentions urged by defendant on appeal, namely, that the assured was not traveling as a passenger but was serving as a member of the crew.

Defendant says that the court erred in submitting to the jury, as a question of fact, whether the words "passenger," "operating the plane," and "serving as a member of the crew" were ambiguous. Defendant insists that these terms of the policy were not ambiguous and needed no construction, but that if construction were needed, the question presented was one of law for the court, not of fact for the jury, and, finally, that if the court might submit the question to the jury, it should have given defendant's requests setting forth the factors which the jury might consider in determining assured's status on the plane. With the matter of status we have already dealt. The court properly refused such requests. As for construction of the terms of the policy, we think that, in effect, the court did do just that, as a matter of law, when it instructed the jury, with respect to the meaning of the terms of the policy, that "the result will depend on exactly what you find Dr. VanderLaan was or was not doing immediately before and at the time of the accident so far as operation of the plane is concerned." That seems to us to be a clear construction of the policy by the court and instruction of the jury accordingly. We think it correct.

Affirmed, with costs to plaintiff.

Carr, Kelly, Smith, Black, Edwards, Voelker, and Kavanagh, JJ., concurred.