## No. 21575.

FRANCES P. WARNER *v*. THE PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, A CORPORATION.

(433 P.2d 113)

Decided October 2, 1967. Rehearing denied November 20, 1967.

Benjamin E. Sweet, Howard J. Swenson, for plaintiff in error.

Phelps, Hall & Smedley, for defendant in error.

*In Department.*

Opinion by Mr. Chief Justice Moore.

Plaintiff in error, hereinafter referred to as Frances, is here on writ of error seeking reversal of a judgment entered by the trial court in her action against the above named insurance carrier, in which she sought to recover "double indemnity" for the accidental death of her husband.

The controversy arises over the following provisions contained in the insurance policy issued by the defendant in error upon the life of the husband of Frances.

"THE ACCIDENTAL MEANS DEATH BENEFIT AS LIMITED AND DEFINED HEREIN is an amount equal to the Face Amount of Insurance, and if payable in accordance with the provisions of this Policy, will be added to the proceeds otherwise payable. .

\* \* \*

"CONDITIONS AND EXCEPTIONS: .

\* \* \*

"(3) No such Accidental Means Death Benefit shall be payable if the injury or death results \* \* \* (e) directly or indirectly from travel or flight in or descent from any

kind of aircraft used anywhere for any purpose, if the Insured is a pilot, officer or member of the crew of such aircraft, or is operating or assisting in the operation of such aircraft, * * * or has any duties whatsoever aboard such aircraft while in flight; * * *"

All of the facts were presented to the trial court on stipulation of the parties. Both the plaintiff and the defendant made motions for entry of summary judgment. The trial court granted the motion made by the insurance company.

The husband of Frances owned an airplane (through his wholly owned corporation). He and a companion Robert Q. Boyce, being the only occupants of the plane, were killed in a crash which occurred on March 3, 1962, near Corona Pass in Colorado. Following the accident the defendant in error paid to Frances the face value of the policy but denied liability under the "Accidental Means Death Benefit" clause. The basis for this refusal was that the admitted facts, as a matter of law, bring the case within the exclusion clause (3) above quoted.

On behalf of Frances it is argued that Warner was not the pilot of the plane at the time it crashed since his companion Boyce was in the pilot's seat when the bodies were found, and all evidence pointed to the fact that when the crash occurred Warner was not piloting the aircraft. It is argued that the exclusion clause relied on by the insurance company refers to conduct of the insured "while in flight," and is wholly unrelated to any events occurring on the ground and before the plane becomes airborne. It is argued that nothing in the stipulation brings Warner within the coverage of the exclusions for the reason that only conduct while "in flight" is proper for consideration in this connection.

It is also argued that a provision of the policy to which we refer as the "Extra Risk Clause" requires entry of a judgment for Frances for the amount claimed by her for "accidental means death benefit." In the application for issuance of the policy a detailed question-

naire was presented to Warner and the inquiries therein related to the flying activities of the applicant, all of which were answered by him. Following receipt of the disclosures made in this questionnaire, the insurance company made an "extra risk" premium charge of $105 per year.

Counsel for Frances argue as follows:

"The policy which Robert Warner first applied for would have given him complete protection — life and double indemnity for accidental death *except* it did not protect him if his death occurred while flying an airplane. But it did provide double indemnity if he was killed when a passenger on an airplane. In this respect he belonged in the same class as anyone else. The fact that he had flown and intended to fly had no bearing on that policy, since it was subject to aviation exclusions and gave him no protection if he was killed while flying.

"Why then did he pay an extra premium, if not to acquire complete protection even while flying?"

We consider first the argument concerning the "Extra Risk Clause." Counsel for the insurance company argues that the "extra risk" premium is related solely to the $30,000 benefit payable to Frances upon the death of her husband from any cause whatever, and that the additional $30,000 accidental death benefit is excluded by the aviation clause hereinabove quoted from the policy.

 The application for issuance of the policy disclosed that Warner was frequently involved in aviation, and as a result thereof a "rider" was attached to and made a part of the policy. It contained the following:

"On the life of Robert C. Warner

"EXTRA RISK CLAUSE

"AMOUNT OF EXTRA PREMIUM

"$105.00 Annually

"Because of the class of risk to which the Insured belongs, the Policy is issued with an extra premium, in the amount specified above, which is included in the

amount of premium stated on the first page of Policy * * *"

There is nothing contained in the foregoing "rider" which could be construed as changing the terms and conditions of the policy except as to the amount of the premium to be paid. It does not operate to waive or to nullify the exclusions from liability to pay the double indemnity for accidental death. Special risk classifications resulting in increased premiums for persons engaged in hazardous pursuits are permissible under C.R.S. 1963, 72-3-17 (1) (a).

 Counsel for Frances asks, "What did Robert C. Warner receive for this extra premium?" The answer is that in consideration of the "extra premium," an insurance policy was issued on his life which ultimately resulted in the payment of $30,000 to his named beneficiary for a death caused by the very activities for which the extra premium was charged. The policy would not have been issued at all unless the "extra premium" had been paid. In construing an insurance policy, as stated by this court in *United States Fidelity and Guaranty Company v. The First National Bank of Fort Morgan,* 147 Colo. 446, 364 P.2d 202, we cannot overlook the well established principle that,

"* * * *an insurance carrier or indemnitor against loss cannot be held liable beyond the scope of risks which have been clearly covered in its contract.*

"We find no ambiguous language in the contract here in question. In determining the rights and liabilities of parties to a written contract, the language used therein must be construed in harmony with the plain and generally accepted meaning of the words employed. * * *" (Emphasis added.)

 An examination of the stipulation concerning the facts leads inescapably to the conclusion that, at the time of the accident which caused Warner's death, he was performing acts which, as a matter of law, brought

him within the ambit of the exclusions from liability for payment of additional $30,000 for accidental death.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE DAY concur.