**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a Corporation, Appellant,**

v.

**Alice D. MITCHELL, Appellee.**

**No. 18892.**

United States Court of Appeals
Eighth Circuit.

April 30, 1968.

Stryker, Marshall & Veach, Omaha, Neb., on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

Ferguson S. Mitchell lost his life when an L–16 Aeronca crashed in Seward County, Nebraska, on October 4, 1964. The issue on the appeal of this diversity suit is whether an exclusionary clause eliminated coverage under a then outstanding and otherwise applicable group accident policy. The policy was one issued by American Casualty Company to Peter Kiewit Sons' Company and others. It afforded accident insurance to designated officers and employees including the decedent. Mrs. Mitchell, the plaintiff here, was the named beneficiary in her husband's $50,000 principal sum certificate. The jury verdict in the trial court was in her favor.

The facts are not disputed. Mr. Mitchell had been a member of the Civil Air Patrol for over seven years prior to his death. He held the rank of first lieutenant. He was a licensed pilot and training officer of a squadron at Omaha. In the spring of 1964 he had conducted a training course for observers.

Each year the Nebraska Wing of the CAP undergoes an exercise sponsored by the United States Air Force. This takes the form of a simulated search and rescue mission which is then evaluated by the Air Force. A test of this kind was scheduled for October 3–5, 1964. Salvaged plane parts were placed on a farm near Bee, Nebraska, to represent a crashed plane. The problem for the CAP was to locate this wreckage on operations from its base at Wahoo. Mr. Mitchell was to be a participant.

On October 4 Mr. Mitchell reported at headquarters and signed the "Aircrew Registration" form as observer in a plane of which M. J. Eyre signed in as pilot. The two men attended a briefing with other persons assigned as pilots

John R. Barton, of Crossman, Barton & Norris, Omaha, Neb., for appellant; Raymond M. Crossman, Jr. and Crossman, Barton & Norris, Omaha, Neb., on the brief.

Joseph K. Meusey, of Fraser, Stryker, Marshall & Veach, Omaha, Neb., for appellee; Robert G. Fraser and Fraser,

and observers. Each observer was given a packet with an air map, the assigned grid, writing material, and a message drop.

Eyre and the decedent were the ones who located the simulated crash. When they had done so, they flew to a ground rescue team and dropped a message that they had found the wreckage and to "follow me". They then returned to the site. In circling over it, their plane "dropped out of the sky". Both died in the crash. It was stipulated that Mr. Eyre was occupying the front seat of the aircraft and Mr. Mitchell the rear seat.

The policy in question contained the following exclusionary language:

"This policy does not cover any loss, fatal or non-fatal, caused by or resulting from:

> * * * * * *
>
> "(4) accident occurring while the Insured Person is operating, or learning to operate, or performing duties as a member of the crew of any aircraft. * * * " .

Evidence was introduced at the trial to the following effect: The Aeronca had a complete set of controls in each cockpit position. The mission was conducted according to a manual published by CAP national headquarters. No search mission is flown without an observer in the plane. As a uniform practice, the pilot occupies the first seat of a tandem seat plane and the observer the rear seat. The observer's principal function is to look for the target. This is because the pilot is occupied with the operation of the aircraft. The observer has nothing to do with the plane's operation. He is responsible for noting unusual things, ground parties, and landmarks. At the conclusion of the flight the observer reports to the debriefing officer. This officer evaluates the report and, if he thinks it of significance, passes it on to others. The CAP manual refers to the pilot and observer as making up the "air crew". However, another Nebraska CAP observer at the time did not know of any term commonly used to identify the pilot and observer as an entity and did not consider herself a part of a crew. It is not a requirement that observers have any form of flight training. Nevertheless, qualified pilots are frequently used as observers.

At the close of the evidence, each side moved for a directed verdict. These motions were denied by Chief Judge Robinson. The case, accordingly, was submitted to the jury under a charge that the only question for its determination was whether Mr. Mitchell, at the time of the crash, was a "member of the crew of any aircraft", as that phrase was employed in the policy's exclusionary provisions. The court instructed that the burden of proof as to the decedent's qualification as a crew member was on the insurance company and, over objection, that the exclusionary phrase meant "a person who during the flight of the airplane in question was taking part in the operation, maintenance or upkeep of the airplane".

The insurer's argument on appeal is that the case presents no factual material for resolution by the jury; that policy provisions are to be given their ordinary meaning in line with the intent of the parties when the contract is made; that the exclusionary clause is not at all ambiguous; that the court erred in its instruction in confining a crew member to one taking part in the operation, maintenance or upkeep of the aircraft; and that it also erred in failing to instruct that the term meant any person present in the plane for the performance of some specific task, assignment or duty connected with the purpose of the particular flight. The plaintiff, in response, argues that the phrase "member of the crew of any aircraft" must be considered in context and does not have unvarying legal significance; that here it meant only one taking part in the plane's operation, maintenance or upkeep; and that whether Mr. Mitchell at the time was so engaged was a question for the jury.

The issue, thus, is a clear and precise one.

■■ In a diversity case such as this one burden of proof is "substantive" and a federal court is to apply state law. Dick v. New York Life Ins. Co., 359 U.S. 437, 446, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959); Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); United States Rubber Co. v. Bauer, 319 F.2d 463, 465 (8 Cir. 1963). Nebraska law, of course, is applicable here.

■ Also, where, as here, there is no dispute that the decedent was an insured, that the plaintiff is his designated beneficiary, and that the insured's death was by accident, and where the insurer's defense is based on an exclusionary clause in the policy, the burden is on the insurer to prove facts which bring it within the exclusion. This appears to be the rule in Nebraska as well as generally elsewhere. Railway Officials' & Employees' Acc. Ass'n v. Drummond, 56 Neb. 235, 76 N.W. 562, 563 (1898); Home Benefit Ass'n v. Sargent, 142 U.S. 691, 700, 12 S.Ct. 332, 35 L.Ed. 1160 (1892); Aetna Cas. & Sur. Co. v. Stover, 327 F.2d 288, 291, 7 A.L.R.3d 655 (8 Cir. 1964); State Mut. Life Assur. Co. v. Wittenberg, 239 F.2d 87, 90 (8 Cir. 1956); Milliken v. Fidelity & Cas. Co., 338 F.2d 35, 41 (10 Cir. 1964); 46 C.J.S. Insurance § 1317b (2) (b); 29 Am.Jur., Insurance, § 1854 (1960).

The jury verdict resolved, adversely to the insurer, any possible question that Mr. Mitchell was "operating" the plane, within the meaning of that word as it appears in the exclusionary clause. This takes us, then, to the succeeding phrase, "or performing duties as a member of the crew of any aircraft".

■ We are satisfied that this phrase does not go so far as necessarily to eliminate coverage for all persons other than mere passengers. If that were so, we would expect to find the language more clearly to that effect as, for example, "or performing any duty or acting in any capacity other than as a passenger". But the exclusionary language is directed to duty "as a member of the crew of any aircraft". We cannot say that these words, in the light of the facts, are automatically self-evident. In one sense, Mr. Mitchell was a member of a two-man crew, that is, of a pair engaged in a CAP mission. But was he a member of the crew of an aircraft? The distinction lies in the application of the word "crew" to the essential enterprise. If that enterprise is the CAP mission, we have an answer which is positive. If that enterprise is the aircraft and its operation, the answer on the facts here is less than obviously positive and yet is not necessarily negative; analytically, it becomes a question for the jury to resolve.

■ To be sure, there may be fact situations where the application or non-application of an exclusionary clause of this type is self-evident and one as to which reasonable men cannot disagree; it then becomes a matter of law for the court. See, for example, Rauch v. Underwriters at Lloyd's of London, 320 F.2d 525 (9 Cir. 1963) (exclusion clause read "while * * * operating * * * or serving as a member of a crew of an aircraft"; insured was piloting a plane when it crashed into a lake and sank; the possibility that he emerged from the plane and died from drowning as he attempted to swim to shore was not held to create a jury issue); and Smith v. Prudential Ins. Co., 300 S.W.2d 435 (Mo. Sup.1957) (limiting aviation clause applied if the insured died as a result of air travel and "[is] a pilot, officer, or member of the crew of such aircraft, or is operating or assisting in the operation of such aircraft, or is giving or receiving any kind of training or instruction, or [has] any duties whatsoever aboard such aircraft while [he is] in flight"; the insured was the highest ranking officer of air force personnel on the flight and was designated as a copilot; the plane crashed with all aboard lost and with no way of ascertaining the insured's position on the plane; the court held that the insurer's affirma-

tive defense was established as a matter of law and that to permit a jury to find that the insured was not the copilot at the time of the crash "would be to approve a verdict based upon sheer conjecture and speculation").

The fact situations of those two cases, however, are clearly distinguishable from the present one. In *Rauch* the insured was the pilot and the exclusion applied to the plane's operator as well as to its crew; the claimant's only argument was whether that status had come to an end at the time of death. In *Smith* the copilot status was established, as well as an official flight, in the face of an exclusionary clause applicable to a pilot, crew member or one having "any duties whatsoever aboard such aircraft while in flight".

The exclusionary clause here, unlike that in *Smith*, related only to "operating * * * or performing duties as a member of the crew of any aircraft". The difference is obvious. Mitchell's licensure, the dual controls, and the CAP mission on the one hand, and his assignment and activity as observer, and his occupancy of the second, rather than the first, seat, made the fact situation, at most, a jury question, if not a matter of law to be resolved in the plaintiff's favor.

A case close on its facts is New York Life Ins. Co. v. Atkinson, 241 F.2d 674 (10 Cir. 1957), cert. denied 353 U.S. 959, 77 S.Ct. 865, 1 L.Ed.2d 910. A policy's double indemnity provision excluded liability if death resulted from travel in flight "while the insured is participating in aviation training in such aircraft or is a pilot, officer or other member of the crew of such aircraft". An exploration company was searching for uranium and other metals in Wyoming. This was done by aerial surveys with scintillometer readings and ground studies. The air survey work was performed with a tandem-seated, dual control plane which had a scintillometer installed in the observer's or rear seat.

The rear seat control was not operative when the aircraft was so used. The occupants were commonly called the pilot and the observer. The latter operated the scintillometer. The two men studied maps and made out the flight plan for each day. This plan was followed to the extent weather permitted. The duties of the pilot were to operate and fly the aircraft. The duties of the observer were to watch and operate the scintillometer. The insured was the observer. He was also a qualified flyer for ordinary flying but not for low-flying exploratory work. The plane crashed while in this work. The case was tried to the court and judgment awarding recovery under the double indemnity provision was entered. The Tenth Circuit noted that the policy did not undertake to define the crucial word "crew". It concluded that the word was ambiguous and therefore was to be interpreted in the manner most favorable to the insured. Operating the scintillometer "had nothing whatever to do with the operation of the plane. The pilot alone operated the plane. The insured did not take any part in its operation, maintenance, or upkeep. He was not a member of the crew of the plane within the intent and meaning of the policy of insurance". P. 677 of 241 F.2d.

Somewhat different in posture, but of interest here, is Vander Laan v. Educators Mut. Ins. Co., 356 Mich. 318, 97 N.W.2d 6 (1959). There, an accident policy covered the insured while he was a passenger in a powered civil aircraft but excluded liability "while operating * * * or serving as a member of the crew of any aircraft". The insured was a licensed pilot and owned a plane. It had dual controls.' It crashed while being flown with the insured in the left or pilot's seat and with an experienced pilot and air force flight instructor in the right or copilot's seat. Both were killed, but two passengers seated behind them survived. Neither survivor knew who was handling the controls of the plane at the time of the crash. The

Michigan court stressed what the insured was doing, rather than his status during the trip. It concluded that, because ·there was testimony from which a reasonable inference might be drawn that the insured was not at the controls when the crash occurred, a question of fact for the jury was presented. This, of course, favored a plaintiff-claimant in a situation where, if status were controlling, the plaintiff would be defeated, as was, indeed, the outcome in *Rauch* and *Smith*, both supra.

See, also, and compare Prudential Ins. Co. v. Barnes, 285 F.2d 299 (9 Cir. 1960); Le Breton v. Penn Mut. Life Ins. Co., 223 La. 984, 67 So.2d 565, 45 A.L.R.2d 446 (1953); Orihuela v. Prudential Ins. Co., 124 N.Y.S.2d 470 (Sup. Ct.1953).

■ We find nothing legally offensive in the trial court's instructions relating duty as a member of a crew of an aircraft to participation "in the operation, maintenance or upkeep of the airplane". This is precisely the language employed by the Tenth Circuit in *Atkinson*, supra, when that court was confronted with "member of the crew" language. This approach, too, was given what perhaps is far-reaching effect in *Vander Laan*, supra. And it clearly lies at the base of the reasoning in both *Smith* and *Rauch*.

■ Further, we find no error in the court's refusal to give the instruction requested by the insurer that a member of the crew "shall be taken to mean any person present in an aircraft for the performance of some specific task, assignment or duty connected with the purpose of the particular flight". An instruction of this kind might be indicated in the presence of a contrasting exclusionary clause similar to that in *Smith*, namely, "any duties whatsoever aboard such aircraft while in flight". But such language is noticeably absent here. If the insurer, because of its concern for flight risks, feels that it must have the protection of a broader exclusion, it is up to it to develop and use language which clearly provides the desired result.

The judgment is affirmed. One-half the cost of the supplemental record may be taxed.