No. 22503.

TRAVELERS INSURANCE COMPANY, A CORPORATION *v.*
FRANCES P. WARNER.
(456 P.2d 732)

Decided July 14, 1969.    Rehearing denied August 5, 1969.

WOOD, RIS & HAMES, EUGENE S. HAMES, for plaintiff in error.

BENJAMIN E. SWEET, HOWARD J. SWENSON, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

THE husband of defendant in error lost his life in an airplane accident. She brought action against the plaintiff in error insurance company to recover under a $5,000 accident policy. The case was presented to the district court under a stipulated set of facts, and the plaintiff prevailed. The pivotal question involved, as we view the matter, is whether the decedent was serving as a member of the craft's "crew" at the time of the accident.

Parenthetically, it is noted that an action arising from the same accident but under another policy was the subject of review here in *Warner v. Prudential Insurance Company of America,* 164 Colo. 35, 433 P.2d 113.

As originally issued, the policy involved here excluded any loss resulting from an airplane accident. Under a rider attached to the policy, coverage was granted to the insured while a passenger in an aircraft having a valid and current airworthiness certificate and while being operated by a duly licensed or certificated pilot. The rider further stated, "This extension of coverage shall not apply * * * to any person * * * serving as a member of a crew of * * * an aircraft."

Except for 2 shares out of 375, Warner, the insured, was the owner of all the stock of Robert C. Warner, Inc. He was president and a director of the corporation. Title to the plane was in the corporation but,. for the purposes of this case, Warner was in effect the owner of the aircraft, and we shall so consider him.

On March 3, 1962, Warner and one Boyce were together in Las Vegas, Nevada, preparing to return to Denver. Warner filled out and filed a flight plan for an IFR — *i.e.*, an instrument — flight to Denver. Warner held a commercial pilot's license with an instrument rating. Boyce, while holding a private pilot's license, was not licensed to fly by instruments. During departure and takeoff, Warner and Boyce, separately and from time to time, operated the aircraft's radio for the purpose of communicating with the air control tower to obtain taxi instructions, runway clearance, information relating to wind direction and velocity, air pressure, temperature, time and weather, and take-off and flight clearance instructions. At 4:17 P.M., Warner communicated by the plane's radio with the Denver Air Route Traffic Control Center to obtain weather information. Ten minutes later the craft crashed on Corona Pass, west of Denver. Warner and Boyce, the sole occupants, were killed.

The stipulation as to the facts provides:

"That the said [plane] was a * * * four-place aircraft; that the flight controls are designed to be operated by a single person at any one time; the aircraft was equipped with a radio and attached thereto were earphones and microphone for use by the person operating the controls and also an additional set of earphones and microphone for use by a second person aboard the aircraft; and navigation may be handled by either the person operating the controls or by a second person aboard the aircraft; that it is customary for the person flying the aircraft to occupy the left front side of the aircraft, but the aircraft can be operated from either the right or left front seat; that the throw-over control wheel * * * is held in position by a spring pin which must be manually released before the control wheel position can be changed from left to right or vice versa; that the control wheel position can be readily changed from left to right while the aircraft is on the ground or is in flight and that when said aircraft was found the body of Robert C. Warner was oc-

cupying the right front side of the aircraft and the body of said Robert Q. Boyce was occupying the left front side of the aircraft, and the throw-over control wheel was positioned to the left directly in front of the body of the said Robert Q. Boyce, and a member of the rescue party had to disengage the spring pin above mentioned so that he could move the body of the said Robert Q. Boyce."

In its findings, the trial court stated:

"It seems to me that this accident all boils down to the question of whether or not this man Warner was operating this plane, or was he a part of this crew? In a light plane of this kind, there is no evidence to this Court that there is such a thing as a 'crew.' There were just two men aboard this plane. * * *

"In view of the fact that the question has been singled out as to who the pilot of this plane was, based on the evidence in this matter before this Court and the stipulation entered into by counsel, this Court is of the opinion that one Robert Q. Boyce was pilot of said plane; that at the time of this crash the decedent was a passenger in said plane."

We disagree. We are impelled to the conclusion that Warner was not a passenger and that he was a member of a two-man crew. The word "crew" has different meanings in different contexts and in some factual situations may be ambiguous. See *Le Breton v. Mutual Life Ins. Co.,* 223 La. 984, 67 So.2d 565, 45 A.L.R.2d 446, and *New York Life Insurance Company v. Atkinson,* 241 F.2d 674 (10th Cir.). We regard the word "crew" as used in the policy as meaning a company of two or more persons associated together for the purpose of operating an aircraft between different points or during a certain time interval. (As a provision of the policy excluded the insured while "operating" an aircraft, our definition does not need to embrace a one-man crew.) It is clear to us from the stipulated facts that these two men were associated together for the purpose of flying the plane from Las Vegas to Denver. Assuming that Boyce was the pilot,

Warner participated in the flight operation by preparing and filing the flight plan, handling the radio in part and occupying the co-pilot seat, from which position he could assume the pilotage at any moment. In addition, we note the following significant factors: that he was the owner of the craft; that he held a commercial license; and presumably was more skilled in piloting an aircraft than Boyce was. While Boyce had the controls, it is obvious that Warner was in command.

We have been directed to *Le Breton and Atkinson, supra,* as well as *Smith v. Prudential Insurance Company of America,* 300 S.W.2d 435 (Mo. Sup.), and *American Casualty Company of Reading, Pa. v. Mitchell,* 393 F.2d 452. While some of the statements of law in these cases are helpful, their fact situations are distinguishable from the instant one. The facts in *Vander Laan v. Educators Mutual Insurance Company,* 356 Mich. 318, 97 N.W.2d 6, are very similar to those with which we are here involved. There a verdict and judgment in favor of the beneficiary of the policy were affirmed. We simply reach a different conclusion than that of the learned Michigan court.

In *Vander Laan, supra,* it was held that the term "serving as a member of the crew," as distinct from being a member of the crew, referred to actual operation and not to status. While it is not in the record, it is a well known fact that the Corona Pass area is one of the principal graveyards of small aircraft in the Rocky Mountain area. As he was a Colorado pilot, this undoubtedly was known to Warner. Even if we adopted the *Vander Laan* concept as to "serving," we would still conclude that Warner was a member of the crew when he talked to Denver at 4:17 P.M. and, as they were operating in a hazardous area, they certainly did not cease so to serve during the succeeding ten minutes.

In view of our disposition of this matter we deem it unnecessary to pass upon the other alleged errors presented to us.

The judgment is reversed and the cause remanded with direction to enter judgment in favor of the defendant.

MR. CHIEF JUSTICE MCWILLIAMS and MR. JUSTICE HODGES concur.