**Barbara S. BECKWITH, Plaintiff,**

v.

**AMERICAN HOME ASSURANCE COMPANY, Defendant.**

**No. C–C–82–537–M.**

United States District Court, W.D. North Carolina, Charlotte Division.

May 6, 1983.

Lloyd C. Caudle and John H. Northey, III, Caudle, Underwood & Kinsey, P.A., Charlotte, N.C., for plaintiff.

Douglas N. Campbell and Brian J. O'Shea, Mitchell, Loggins, Campbell & Elsberry, Atlanta, Ga., Daniel G. Clodfelter, Moore, Allen & Van Allen, Charlotte, N.C., for defendant.

## MEMORANDUM OF DECISION

McMILLAN, District Judge.

On March 11, 1982, Peter Beckwith, plaintiff's husband, died as a proximate result of injuries received in a plane crash two days earlier. At the time of the accident, he was a salaried employee of Reeves Bros., Inc., covered under an insurance policy issued by defendant, and had designated plaintiff as the beneficiary of the proceeds on his life. She filed this action in diversity for money allegedly due to her under the policy. The parties have now filed cross motions for summary judgment. At issue is whether the policy covered Peter Beckwith on his fatal flight.

### The Policy

Reeves Bros., Inc., as policyholder, secured an Accidental Death and Dismemberment Policy issued by the defendant covering salaried employees such as Beckwith. A copy of the policy, identified as Exhibit D–1, with the addition of an amended Hazard H–19 (Exhibit A), has been stipulated as a genuine, true and correct copy of that policy. *See* Documents numbers 18 and 22.

The only portion of coverage under the policy relevant to this case is that provided under Hazard H–12, entitled "24–HOUR ACCIDENT PROTECTION WHILE ON A TRIP—BUSINESS ONLY." Hazard H–12 covers injury or death sustained by an insured person anywhere in the world "*while on the business of the Policyholder and during the course of any bonafide trip made by the Insured Person.*" (Emphasis added.) The policy further provides that "[s]uch insurance includes such injury sustained during such trip while the Insured Person *is riding* as a passenger *(but not as a pilot, operator or member of the crew)* in or on, boarding or alighting from [a certified plane flown by a certified pilot]." (Emphasis added.) The Exclusions section of Hazard H–12 provides that its coverage does not extend to any loss caused while the insured person is "flying in any aircraft owned or operated by the Policyholder, unless previously consented to in writing by [the defendant]." (A separate section of

the policy, Hazard H–19, provides coverage for accidents occurring in aircraft owned by the policyholder and lists those such aircraft covered by the policy.)

### The Undisputed Facts

Warren Pollock is the president of the Curon Division of Reeves Bros., Inc., a corporate vice president and director, and was at the time of the events in question Peter Beckwith's immediate supervisor.

Pollock owned, either in his own name or in partnership with his wife under the name of Centur Aviation, two airplanes—a single-engine Cessna 210, # N3909Y, and a twin-engine Piper Aztec, # N888WP, formerly # N6307Y. Pollock has flown extensively in performing his duties for Reeves. The Company purchases all fuel and oil used in conjunction with such business trips. Although the company does not pay Pollock directly for repairs, insurance, taxes, licenses, and other maintenance, it does pay him an annual lump sum of $2,500.00 in addition to the fuel and oil costs. This amount does not fully reimburse Pollock for his expenses in maintaining the planes for business use.

On Monday, March 8, 1982, Pollock asked Beckwith if he would fly the Cessna to Commerce, Georgia, the next day in order to bring Pollock back from delivering the Aztec to a paint shop to have the registration number changed. (Like Pollock, Beckwith was a licensed pilot with a current certificate; however, unlike Pollock, who had been flying for eight years and had over 1,500 hours air time, Beckwith had only a few hours of actual flight time.) The two of them had before them a busy week in the Charlotte area, but because no travel was planned for that week, it was a convenient time to have the number changed.

Early on the morning of March 9, 1982, Beckwith and Pollock met at the Charlotte airport. Beckwith performed the pre-flight procedures on the Cessna and Pollock performed them on the Aztec. Departing at about 8:30 A.M., Beckwith flew the Cessna and Pollock flew the Aztec to Commerce, Georgia. They dropped off the Aztec and got back in the Cessna. Beckwith occupied the left seat, taxied the plane out, and took off, piloting the plane. Pollock suggested that they fly at 2,500 feet. Upon attaining that altitude, Beckwith reduced the power and prop setting to cruise. At that point Pollock noticed that Beckwith had not yet leaned the fuel mixture, so he reached over and leaned the mixture. He then noticed that the fuel pressure was dropping so he immediately enriched the mixture again to full rich, but the pressure continued to drop. Pollock then took control of the plane, commenced emergency procedures, which proved unsuccessful, and crash-landed the plane. Pollock survived, but Beckwith died two days later.

### The Issues and the Law

Defendant argues that it is entitled to summary judgment because Beckwith's accident was not covered by the policy for three different and independent reasons. It claims that it is undisputed (1) that the accident did not occur while Beckwith was "on the business of the Policyholder"; (2) that the accident did not occur while Beckwith was "riding as a passenger (but not as a pilot, operator or member of the crew)"; and (3) that the aircraft was "owned or operated by the Policyholder" within the meaning of ¶ 5 of the Exclusions Section of Hazard H–12, but had not been approved by defendant for coverage. Defendant's Brief in Support of Motion for Summary Judgment, Document # 17.

The provisions of the policy should be construed liberally in favor of the insured (or strictly against the insurer). *See, e.g., Goodson v. American Home Assurance Co.,* 251 F.Supp. 125 (E.D.Tenn.1966), *modified on other grounds,* 381 F.2d 6 (6th Cir. 1967) ("operated by the Policyholder" exclusion of defendant's Hazard H–12 construed liberally in favor of insured). With this principle in mind, the court finds that defendant's first and third arguments, if they have any merit at all, raise questions of fact for a jury to decide. However, on the basis of its claim that the insured was riding in the Cessna as a pilot or member of the

crew, and not as a passenger, defendant is entitled to summary judgment.

■ Where coverage of an insurance policy has been suspended by a breach by the insured of a condition of the policy, subsequent compliance with the condition will not revive the coverage *if there has been an increase of risk of loss in the interim. Crowell v. Maryland Motor Car Ins. Co.,* 169 N.C. 35, 85 S.E. 37 (1915). *See also Fidelity-Phenix Fire Ins. Co. v. Pilot Freight Carriers,* 193 F.2d 812 (4th Cir. 1952). If risk has been increased under such circumstances and loss occurs, no causal connection between the breach and the loss need be demonstrated. *Ritchie v. Travelers Protective Ass'n.,* 203 N.C. 721, 166 S.E. 893 (1932). *See also Powell Valley Electric Cooperative, Inc. v. United States Aviation Underwriters, Inc.,* 179 F.Supp. 616 (W.D.Va.1959).

In this case the coverage of the policy was suspended when Beckwith piloted the plane and the risk of loss increased while coverage was suspended. Coverage could have been renewed only if Pollock had been able to restore the plane to safe and normal operating condition—which he did not.

Moreover, even if these principles of law did not control this case, a reasonable person could not conclude that Beckwith was "riding as a passenger" within the meaning of the policy. He performed pre-flight procedures on the plane, flew it to a destination, handled the return take-off and continued to pilot the plane until it got into danger, at which time he relinquished control and disaster swiftly ensued.

Seeking, understandably, to avoid the conclusion that North Carolina law and common sense command, plaintiff argues that the critical question is what was the insured doing at the time of the crash. She claims that since Pollock was in control of the plane when it went down, her husband was at that point a "passenger" covered by the policy.

In support of this proposition she cites two cases from other jurisdictions. In *Vander Laan v. Educators Mutual Ins. Co.,* 356 Mich. 318, 97 N.W.2d 6 (1959), the policy covered the insured while traveling as a passenger but excluded from coverage loss resulting "while operating, . . . or serving as a member of the crew of any aircraft." The insured—a licensed pilot and owner of the plane—went with another pilot and two passengers on a fishing trip that required two days' flight each way. Both pilots participated in flying the plane, but the other pilot had been doing the flying on the leg of the journey immediately preceding the leg when the crash occurred. There was some reason to believe that he, not the insured, had been in control of the plane when it crashed, though the surviving passengers could not say. In addition, over the course of the trip the insured had handled most radio communications, checked weather reports, consulted maps, and obtained clearance for landing and takeoff, but there was no evidence that he was performing any of these duties at the time of the crash. The court held that if the insured was not at the controls or performing crew duties *when the crash occurred,* he was a passenger within the terms of the policy despite his pilot and crew duties at earlier times on the trip.

Even if one accepts that insurance coverage can fluctuate over the course of a long voyage as two pilots pass the controls back and forth, it does not follow that a pilot can become a passenger by relinquishing the wheel on the way down. To the extent that *Vander Laan* propounds what might be called a "moment of impact" standard, it is not supported by any other authority cited by the parties.

In the other case relied on by plaintiff, *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Ass'n.,* 215 Kan. 937, 529 P.2d 171 (1974), the policy excluded from coverage loss resulting from "[i]njuries sustained by the Insured while piloting or serving as a crew member of an airplane." The court found that the small plane had no crew duties and there was no evidence that the insured had performed any. The question was whether the fact that the insured had been piloting the plane roughly two hours before the crash was sufficient to

exclude him from coverage under the clause just quoted. The court held that it was not and granted judgment against the insurance company since there was no way it could show

> that at the time of the crash, *or at least at a time when the crash was imminent,* [the insured] was either piloting the plane or actually performing or prepared to perform some function as a member of the crew.  ·

529 P.2d at 180 (emphasis added).

Thus while the Kansas court accepted the idea that an insured's status could change from pilot to passenger over the course of the flight (at least where there were no crew duties to perform), it did not hold that an insured who is piloting an aircraft can suddenly become a passenger for insurance purposes by turning over the controls when a crises arises.

[In attempting to bring her case in line with these cases, plaintiff says that, like them, it involves an "action," as opposed to a "status" policy. *See Vander Laan, supra.* She claims that where a policy uses *active* language, such as "piloting" or "serving as . . .," coverage depends on what the insured was doing at the time of the crash. Even if an action/status distinction may help answer some questions about coverage, such a distinction does not legitimate the "moment of impact" test which plaintiff calls for and which is the only thing that can save her case. Nor is it at all clear that the "riding as . . ." language of the policy in this case denotes action rather than status.]

Defendant cites two Colorado cases construing policy language similar to that here. In *Travelers Ins. Co. v. Warner,* 169 Colo. 391, 456 P.2d 732 (1969), the court expressly rejected the approach of *Vander Laan, supra,* and held that an insured "was in command" and had performed such duties over the course of the flight as to have been "serving as a member of [the] crew." The case itself does not squarely present the issue now before the court, but a subsequent case held that *Warner* controlled the question presented here. *Ranger Ins. Co. v. Ram Flying Club,* 653 P.2d 65 (Colo.App.

1982). In *Ranger,* the insured had been piloting the plane but at some point prior to the accident his flight instructor obtained control of the plane. Relying on *Warner,* the court held that the insured had been involved in operating the plane *during the flight* and therefore was a crew member. Plaintiff's attempt to distinguish this case is unconvincing.

For all of the foregoing reasons, the court concludes that there is no genuine issue as to whether or not, on his fatal trip, the insured was "riding as a passenger" within the meaning of Hazard H–12 of the policy. Defendant is entitled to summary judgment as a matter of law. A judgment will be entered consistent with this memorandum of decision.