PEARSON, Judge.
The appellant issued a policy of insurance covering a Cessna 120 aircraft owned by the Miami Revival Center, Inc. The appellees are the personal representative and the survivors of a student pilot who was killed in a crash of the aircraft. This appeal is from an interlocutory order finding that the policy afforded coverage of the damages sought in the actions by the appellees. We reverse upon a holding that under the terms of the contract of insurance and the admitted facts, the policy did not afford coverage.
The complaint alleged that the defendant, Miami Revival Center, Inc., a Florida corporation, was the owner of the Cessna 120 aircraft involved herein, and that it was being flown under the direct supervision of Joe W. Lain, as flight instructor, and with the knowledge, permission and consent of the defendant, Miami Revival Center, Inc. The airplane crashed near Princeton, Florida, resulting in severe personal injuries to Charles Mathews which caused his death.
Ranger Insurance Company, the appellant here, was joined as the liability insurer for the defendant Miami Revival Center, Inc. Ranger answered by denying coverage. In the meantime, Miami Revival Center, Inc. cross-claimed in a declaratory judgment cause, seeking a determination of coverage. After discovery was taken and the insurance policy itself was presented to the trial court, the court severed the issue of coverage, and ordered that issue tried first.
*869 The parties stipulated[1] to the facts alleged in the second amended complaint, and thereby agreed to the events which preceded the accident. The issue of coverage was submitted to the trial court, and after the court examined memoranda of law from the parties, the court found that coverage existed.
In an extensive judgment and opinion, the trial judge held[2] that the deceased was not a passenger under definitions, and also held that he was not a pilot or crewman under exclusions because he was not responsible for the operation of the aircraft. The court further held that insofar as the policy might be read to provide liability coverage for the benefit of non-passengers but at the same time exclude crewmen it is ambiguous, and, therefore, since the policy was secured with the intention of protecting trainees such as the deceased, the only rational interpretation of the policy would be to treat trainees as non-passengers and non-crewmen.
The appellant urges: (1) The trial judge’s assertion that the insured, Miami Revival Center, Inc., contemplated that there would be coverage for student pilots is without foundation in the factual allegations of the complaint and those facts brought to the attention of the court by the answers to interrogatories or admissions.
*870 (2) The trial judge’s finding that the deceased was a non-passenger and at the same time a non-crewman is completely unsupported by any fact in the record.
(3) The trial judge erred in failing to apply the insurance policy in its clear terms.
The appellees, while supporting the reasoning of the trial judge, urge an additional theory of the case. It is argued: (1) the obvious purpose of the insurance policy was to protect church members taking lessons in the Revival Center airplane; (2) coverage for liability for every non-passenger appears under the declarations portion of the policy and the attempt to eliminate this coverage by exclusion#!)[3] is futile; (3) a written policy of insurance should be construed against the insurance company in case of ambiguity, and inasmuch as the provisions of this policy are manifestly ambiguous, and do not represent the clear intentions of the parties, the policy should be construed strongly against the insurer and liberally in favor of the insured. Therefore, the appellees argue the exclusion is of no effect, not only because it is in contravention to the clear purpose of the policy, but because it is an attempt to abrogate by obscurity what is clearly granted in the insuring portions of the policy.
In summary, we are presented with three separate theories. The first theory, propounded by the appellant, simply states that the policy is clear and effective. The second theory, propounded by the trial judge, reasons that the deceased was a non-passenger and a non-crewman so that coverage is effective. The third theory, argued by the appellees, maintains that the policy is ambiguous, and that therefore the exception excluding crew members from coverage should be ignored.
We turn now to the language of the policy itself and the reasons that we think it is controlling. The insuring agreement for coverage “A” which is the coverage under which the appellees claim, reads as follows:
“Coverage A — Bodily Injury Liability Excluding Passengers. To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, excluding passengers as defined herein, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft.”
This coverage clearly does not include passengers. Exclusion #9 which is equally prominent in the policy except that it comes later reads as follows :
“This Policy does not apply:
* * * * * *
“9. under Coverages A, B and D to bodily injury, sickness, disease or death of any person who is a Named Insured or a pilot or crew member.”
* * * * * *
This exclusion is reinforced by the definition of crew which appears almost immediately under the exclusion. It is as follows:
******
“2. Crew or Pilot. The words ‘crew’ or ‘pilot’ mean any person or persons involved in the operation of the aircraft while in flight.”
******
In short, we see nothing in the plain language of this policy to indicate that any person lawfully aboard the aircraft at the time of the crash was covered.
*871 In light of the foregoing analysis, appellees’ argument that it is fraudulent for an insurance company to provide coverage in the “insuring agreements” and eliminate the coverage in an exclusion is not well founded. See American Liberty Insurance Company v. Gaffney, Fla.App. 1970, 230 So.2d 720; Kickliter v. National Union Fire Insurance Company, Fla.App. 1966, 188 So.2d 872; Alabama Farm Bureau Mutual Casualty Insurance Company v. Goodman, 279 Ala. 538, 188 So.2d 268 (1966). There have been cases, many of which are cited by the appellees, holding that policies of insurance which are fraudulently and unfairly written are found to ambiguous and are construed against the insurance company. A clear example of this type of case is found in this court’s recent opinion, Kennedy v. Lumbermen’s Mutual Casualty Company, Fla.App.1972, 264 So.2d 32. In the Kennedy case, the appellant was injured while riding as a passenger in a type of taxicab known as a “jitney.” The owner of the jitney carried insurance which included the appellant as a person riding in the insured vehicle. When the appellant attempted to effect a recovery through arbitration under the terms of the policy, the insurer filed an action for declaratory judgment alleging that the appellant was not covered because a provision of the policy stated that the term “ ‘insured automobile’ ” as used in the policy would not include “ ‘an automobile while used as a public or livery conveyance’ ”. The appellant filed an answer to this declaratory judgment action on the coverage issue in which he stated that the insurance company had issued the policy to the owner of the jitney with the “ ‘clear knowledge’ ” that the vehicle would be utilized as a jitney and insisted that he was an insured under the terms of the policy. The appellant also served a request for admission on the insurance company asking whether the company had knowledge that the vehicle it insured was to be used as a jitney. The insurance company admitted that it had issued insurance on the vehicle knowing that it was to be used as a jitney. Furthermore, the application for the policy had several specific questions which were asked of the owner of the vehicle including one which asked “ ‘what business’ ” the owner was engaged in. The owner’s answer was “ ‘Private Livery (Jitney)’ ”. However, as the literal words of the policy stated “ ‘the term “insured automobile” shall not include: (i) an automobile while used as a public or livery conveyance’ ”, the trial court held for the insurance company on the strength of this clause in spite of the admitted knowlege of the company that it accepted the vehicle for the specific use of being a livery conveyance. The appellate court, in reversing the judgment of the trial court, suggested that the presence of an exclusionary clause in the policy could be regarded as creating an ambiguity, and analyzed the legal issue as follows:

“The clause of the policy which provides that an insured automobile cannot include one while used as a public or livery conveyance, as contained in the printed form dealing at length with ‘Insuring Agreements’ is a reasonable exclusionary provision to be applied to policies issued on vehicles which therein would be stated to be used for purposes other than ‘as a public or livery conveyance.’ But in a policy (with premium paid therefor) issued on a livery conveyance vehicle, with its intended use as such known to the insurer and stated in the application therefor, the exclusionary clause referred to cannot reasonably be construed to have the effect of vitiating the very coverage for which the policy expressly was intended and issued. That exclusionary clause is not operative where the stated purpose of the insurance is to insure a livery conveyance, for use as such.
“Moreover, if the presence of that exclusionary clause in the policy is regarded as creating an ambiguity (in view of the purpose for which the insurance was *872 issued in this instance) that ambiguity should be resolved in favor of the insured in the circumstances disclosed, as well for the applicable rule of construction.”
>fc * * * ‡
The instant case does not fall within the purview of this holding or other cases cited by the appellee. The policy issued by Ranger Insurance Company does not clearly show an intention to cover members of the crew. Therefore, the exclusion of the crew is a proper limitation on the extent of coverage which is given in general terms in the “insuring agreements.”
This case is not controlled by those opinions holding that an inconsistent or ambiguous policy must be construed against the insurer. There are many cases which so hold. See Harris v. Carolina Life Insurance Company, Fla. 1970, 233 So.2d 833; Home Insurance Company v. Southport Terminals, Inc., Fla.App.1970, 240 So.2d 525; Quick v. National Indemnity Company, Fla.App.1970, 231 So.2d 22; Americas Aviation & Marine Insurance Co. v. Beverly Bank, Fla.App. 1969, 229 So.2d 314; Continental Casualty Company v. Florida Power & Light Company, Fla. App.1969, 222 So.2d 58; Transamerica Insurance Company v. Rutkin, Fla.App.1969, 218 So.2d 509; Peerless Insurance Company v. Sun Line Helicopters, Inc., Fla.App. 1965, 180 So.2d 364. The appellees rely upon American Fire & Casualty Company of Orlando, Florida v. Marathon Aviation Marathon, Inc., Fla.App. 1967, 196 So.2d 782; Peerless Insurance Company v. Sun Line Helicopters, Inc., supra; and National Casualty Company v. General Motors Acceptance Corporation, Fla.App.1964, 161 So.2d 848, which in effect hold that an insurance policy may be so framed as to be fraudulent by appearing to give greater coverage than it actually provides. Yet it is readily apparent that all of the salient provisions of the present policy are clearly set out in large type, and even a cursory reading of the policy would have conveyed the fact that passengers and crew members are not covered.
Appellees’ argument that an enforcement of the provisions of the policy renders it useless is not sustained by a reading of the policy itself. The policy includes the insurance applications for several aircraft which the Miami Revival Center, Inc. wished to insure. The application for the Cessna 120 aircraft with which we are now concerned indicates that the only coverages requested were “bodily injury liability, excluding passengers,” and “property damage liability.” It is readily apparent that the insurance policy under our present scrutiny does not cover passengers under the initial insuring agreement and does not cover crew under exclusion #9. The policy, however, would afford coverage to the insured for injuries to persons who are not a part of the flight or engaged in the operation of the aircraft inasmuch as an airplane has been defined as a dangerous instrumentality. Orefice v. Albert, Fla. 1970, 237 So.2d 142; Shattuck v. Mullen, Fla.App.1959, 115 So.2d 597. It cannot be said that such persons do not exist, as there are cases in which airplanes have caused injury to persons on the ground. United States v. Gaidys, 194 F.2d 762 (10th Cir. 1952); Mathis v. Atlantic Aircraft Distributors, Inc., 216 Md. 262, 140 A.2d 156 (1958); State, to Use of Birkhead v. Sammon, 171 Md. 178, 189 A. 265 (1936).
After carefully considering the provisions of the insurance contract, and thoroughly reviewing the cases, and authorities pertinent to that document, we conclude that the trial court’s interlocutory order on the issue of coverage must be reversed, and we therefore remand the cause to the trial court for such proceedings as are necessary in light of our decision.
Reversed and remanded.

. * * * * *
“1. The facts alleged by the Plaintiffs in the Second Amended Complaints are deemed admitted and true; it being understood, however, that such admissions on the part of RANGER INSURANCE COMPANY does not effect any of the rights of the Defendant MIAMI REVIVAL CENTER, INC. in this case, which matter is to be tried separately by a jury.
“2. The policy in question is that policy which has been attached to Defendant’s Answer and marked Exhibit ‘A’.
“3. All Answers to Interrogatories and Answers to Request for Admissions previously filed in this cause may be used as provided by the rules of discovery by any of the parties in determining this coverage issue.
* * % ' 5¡S *
“5. It is agreed between the attorneys for the Plaintiffs and the Defendants that the coverage issue may be decided as a matter of law by this Court and that the parties shall have a right to file Memorandums of Law in support of their respective positions by February 7, 1972, and that it will not be necessary to have any non-jury trial in lieu of the above stipulation.”
* * * * *

. * * * * *
“4) The policy provided coverage for liability, excluding passengers. The deceased was not a ‘passenger’ under definitions. He was involved in operation of the airplane. By the same token, he was not a pilot or crewman under exclusions, because he was not responsible for operation of the plane. He was, for purposes of this policy, something between a passenger and a crewman, but not excluded as either. This is the only way the policy, and the purpose thereof clearly reflected in the policy make any sense.
“Otherwise, there would be no conver-age at all for injuries or death to any occupant of the airplane. This is not what the policy — or assured — contemplated.
“5) Insofar as the policy might be read to provide liability coverage for the benefit of non-passengers; and at the same time, under exclusions, exclude crewmen, who are the only non-passengers, it is ambiguous. The only thing which makes any sense is to treat the trainees, for whose obvious protection the policy was sought, as both non-passengers and non-crewmen. This is possible, reasonable and desirable here, to effectuate the purposes of the policy.
“6) The court construes the ambiguity in the policy in the light most favorable to coverage, to effectuate the purpose of the policy. The policy is so viewed because the company drafted the policy and the purpose is obvious. Thus, the deceased was a non-passenger under definitions, because he was under definitions involved in the operation of the plane, rendering him coverage, he was not, however, a crewman under exclusions, because he was not at all legally responsible for operation in any aspect. He was a student and was not a crewman under exclusions, under the ordinary common sense meaning of the term, nor under the ordinary legal meaning. This is consistent with plaintiffs’ answers to requests to admit.”
* * * * *

 * * * * *
“9. under Coverages A, B and I) to bodily injury, sickness, disease or death of any person who is a Named Insured or a pilot or crew member.
* * * * *
In “definitions” the.following appears:
* * * * * *
“2. Crew or Pilot. The word ‘crew’ or ‘pilot’ mean any person or persons involved in the operation of the aircraft while in flight.”
*****