273 So.2d 111 (1972)
JOSEPH URAM JEWELERS, Inc., a Florida Corporation, Appellant,
v.
LIBERTY MUTUAL FIRE INSURANCE CO., a Foreign Corporation Authorized to Do Business in Florida, Appellee.
No. 72-269.
District Court of Appeal of Florida, Third District.
December 12, 1972.
Rehearing Denied January 9, 1973.
Podhurst, Orseck & Parks, Fuller, Brumer, Moss & Cohen, Miami, for appellant.
Bradford, Williams, McKay, Kimbrell, Hamann & Jennings and B. Hume Morris, II, Miami, for appellee.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
HENDRY, Judge.
Appellant-plaintiff jewelry company seeks review of an adverse final judgment entered on a directed verdict for the defendant *112 in an action for breach of a jeweler's block insurance contract.
The facts of this cause, viewed in the light most favorable to the appellant,[1] revolve around the desire of the appellant to secure insurance coverage for "mysterious disappearance". In June of 1968, the appellant applied to the appellee for issuance of an insurance policy that would cover these, so-called, "mysterious disappearances" of merchandise or goods in for repair at appellant's place of business. With the aid of appellee's authorized agent, the appellant filled out the application for insurance and requested "0 Deductible Mysterious Disappearance" coverage under the policy. Appellee's agent told the appellant that such coverage would be denied by the insurance company if they would not accept same. Subsequently, the appellee returned the policy to the appellant with the application attached. No deletions were made on the application to indicate that the requested coverage was not covered by the policy. However, the appellant did not read the fine print of the policy to make sure that it conformed to the application. At no time was the appellant specifically informed by the company or its agent that the coverage requested had been denied.
In May of 1969 it was discovered by the appellant that certain jewelry within the store had "mysteriously disappeared" and the police were notified. The appellant notified the appellee insurer of the losses and the appellee's agents investigated. Appellee insurer, thereupon, denied liability for the losses under the provisions of the policy that provided:
"INSURING CONDITIONS
"5. THIS POLICY INSURES AGAINST ALL RISKS OF LOSS OF OR [sic] DAMAGE TO THE ABOVE DESCRIBED PROPERTY ARISING FROM ANY CAUSE WHATSOEVER EXCEPT:
"* * *
"(M) Unexplained loss; mysterious disappearance; loss or shortage disclosed on taking inventory . .."
Upon denial of coverage, the appellant was forced to pay for the losses in the amount of approximately $16,550.00. The appellant, then, brought this action and at the close of the plaintiff's testimony a directed verdict was entered in favor of the appellee insurer.
The appellant presents one point for our consideration, to-wit:
"WHETHER THE TRIAL COURT ERRED IN DIRECTING A VERDICT FOR THE DEFENDANT, AT THE CLOSE OF THE PLAINTIFF'S CASE, ON THE GROUNDS THAT AS A MATTER OF LAW, NO COVERAGE EXISTED UNDER THE POLICY FOR THE LOSS INVOLVED."
We find that the trial court was in error in directing the verdict for the insurer due to lack of coverage under the policy. We, therefore, reverse.
This case presents a situation wherein the terms of the policy as to "mysterious disappearances" are in direct conflict with the desired coverage indicated in the attached application. We must determine which provision is to be controlling  the policy or the application for coverage, since the conflict between the two are irreconcilable.
The policy itself recognized that the application "attached hereto and made a part hereof" is considered "to be the basis of this policy ..." Thus, it has been recognized that recitations of this nature result in the application being deemed incorporated and made a part of the contract of insurance. 1 Couch on Insurance 2d, § 4:3, p. 153.
*113 We, of course, recognize the general rule that when the provisions of the application and those of the policy irreconcilably conflict, the policy provision will usually govern. 1 Couch on Insurance 2d, § 15:32, p. 703; 13 Appleman, Insurance Law & Practice, § 7583, p. 339. However, that rule is qualified in cases where reliance on the provisions of the application would result in greater indemnity. In such circumstances, the provisions of the application will control. 1 Couch on Insurance 2d, supra at 704; 13 Appleman, Insurance Law and Practice, supra, at 341.
The courts of this state have generally followed the view of construing ambiguous terms of insurance contracts in favor of greater indemnity for the insured, when doubts cannot be reconciled. See: Daleo v. Bert and Bette Bayfront 66 Marine (Travelers Indemnity Co.), 273 So.2d 113 (Fla.App.3d, opinion filed December 12, 1972) and the cases cited therein.
Thus, in Quick v. National Indemnity Co., Fla.App. 1970, 231 So.2d 22, the general rule was followed and the provisions of the policy were held to govern since such an interpretation was consistent with more indemnity for the insured. In the case sub judice, however, we feel that the provisions of the application are controlling and will result in greater coverage under the policy. Kennedy v. Lumbermen's Mutual Casualty Co., Fla.App. 1972, 264 So.2d 32; Chatmon v. Lumbermens Mutual Casualty Co., 268 So.2d 551 (Fla. App.3d, opinion filed November 14, 1972).
In addition, we do not believe that the insured's failure to read the policy precludes him from claiming that an irreconcilable conflict exists between the policy and coverage desired. Blumberg v. American Fire & Casualty Co., Fla. 1951, 51 So.2d 182.
Therefore, for the reasons stated and upon the authorities cited, the judgment appealed from is hereby reversed.
Reversed.
NOTES
[1] Hurst v. Krinzman, Fla.App. 1970, 237 So.2d 333.