281 So.2d 345 (1973)
Rebecca MATHEWS, a Minor, et al., Petitioners,
v.
RANGER INSURANCE COMPANY, Respondent.
No. 43136.
Supreme Court of Florida.
June 13, 1973.
Rehearing Denied September 5, 1973.
*346 Robert Orseck, of Podhurst, Orseck & Parks, Miami, for petitioners.
James V. Dolan, of Walsh, Dolan & Krupnick, Fort Lauderdale, for respondent.
ERVIN, Justice.
We have jurisdiction of this cause pursuant to Article V, Section 3(b)(3), Florida Constitution, F.S.A., because of a direct conflict between the decision sub judice of the District Court of Appeal, Third District, reported at 267 So.2d 867 (1972), and the cases of Home Insurance Company v. Southport Terminals, Inc., 240 So.2d 525 (Fla.App. 1970), and Joseph Uram Jewelers, Inc. v. Liberty Mutual Fire Insurance Co., 273 So.2d 111 (Fla.App. 1972).
Petitioners are the Administratrix and survivors of the deceased, Charles Mathews, a student pilot who died as a result of injuries sustained when the Cessna 120 aircraft he was aboard crashed to the ground near Princeton, Florida. Petitioners brought an action in the Dade County Circuit Court against Miami Revival Center, Inc., owner of the aircraft, and Respondent Ranger Insurance Company, the liability insurer of Miami Revival Center, Inc. The complaint alleged that the plane was being flown under the direct supervision of Joe W. Lain, as flight instructor, and with the knowledge, permission and consent of the defendant, Miami Revival Center, Inc. Damages were sought under the Florida Survival Statute, F.S. Section 46.021, F.S.A., and the Wrongful Death Statute, F.S. Chapter 768, F.S.A.
Ranger answered the complaint by denying coverage. Miami Revival Center, Inc. crossclaimed seeking a declaratory judgment *347 as to whether insurance coverage existed. The trial court severed the issue of coverage, and ordered that issue tried first. Following an examination of the terms of the insurance policy and the submission of memoranda of law by counsel, the trial judge issued an interlocutory order finding that the policy afforded coverage of the damages sought by Petitioners.[1] An appeal to the District Court of Appeal, Third District, resulted in a reversal of that judgment and a remand of that cause for further proceedings. Our jurisdiction stems from a timely petition for writ of certiorari to the District Court.
The record in this cause discloses the following background information: Miami Revival Center, Inc., is a religious organization that numbered the deceased among its membership. The Revival Center purchased three airplanes, two of which, including the Cessna 120, were to be used for "limited commercial" purposes. Such purposes encompassed student pilot instruction for church members. Recognizing a need for liability insurance coverage, the Revival Center made application to the Respondent for aircraft insurance. Pertinent portions of the application for insurance coverage of the Cessna 120 read as follows:

 "1. Name of Applicant - Miami Revival Center
 * * * * * * * * * * *
 "3. Liability Coverage and Limits Requested Each Person
 A. Bodily Injury Liability, Excluding
 Passengers ... $100,000.00
 * * * * * * * * * * *
 "5. Description of Aircraft
 * * * * * * * * * * *
 Cessna 120 FAA Iden. No. 77168
 "6. Purpose(s) of Use: The aircraft will be used only for the purposes
 indicated by `X'
 (a) Pleasure and Business ...
 (b) `Industrial Aid' ...
 X (c) `Limited Commercial' The term `limited commercial' is defined
 as including all the uses permitted in (a) and (b) above and
 including Student Instruction and Rental to pilots but excluding
 passenger carrying for hire or reward:
 * * * * * * * * * * *
 "8. INSTRUCTION & RENTAL TO CHURCH MEMBERS ONLY.
 ..."
 (Emphasis supplied.)

Following approval of the above application for insurance, a policy was issued to the Miami Revival Center, Inc., which provided coverage as follows:
1. Coverage "A" provides bodily injury liability, excluding passengers. This is defined as providing insurance to cover damages "including death ... sustained *348 by any person, excluding passengers as defined herein, caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft." There is a $100,000 limit for each person and a $300,000 limit for each occurrence.
2. A description of the insured aircraft is provided: "Cessna 120 N-77168."
3. There is a "pilot clause" which allows only the following pilots to operate the aircraft in flight:
"N-77168: Any student, private or commercial pilot (See Endorsement No. 1)."
Endorsement No. 1 contains the following relevant provision:
"This policy does not apply to any occurrence or to any loss or damage occurring while the aircraft is being operated by a Student Pilot unless each flight is under the direct supervision and specifically approved by a Flight Instructor certified by the Federal Aviation Administration."
4. On page 3 of the policy, under the heading "Exclusions," there appears:
"This policy does not apply
* * * * * *
"9. Under Coverage A, B, and D to bodily injury, sickness, disease or death of any person who is a Named Insured or a pilot or crew member."
Crew or pilot is defined to mean "any person involved in the operation of the aircraft while in flight."
The issue before this Court is whether the insurance policy in question affords coverage for the allegedly wrongful death of the deceased, Charles Mathews. In deciding that question, it is necessary to examine and construe the insurance contract,
"... according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto." (Emphasis supplied.) Section 627.419(1), Florida Statutes,[2] F.S.A.
The application thus becomes a part of the agreement between the parties and the policy together with the application form the contract of insurance. Quick v. National Indemnity Company, 231 So.2d 22 (Fla. App. 1970); 13 Appleman, Insurance Law & Practice, § 7582, p. 334. We have held that a single insurance policy provision should not be considered in isolation, but should be construed with other policy provisions against the background of the case. The Praetorians v. Fisher, 89 So.2d 329 (Fla. 1956). Cf. General Acc. F. & L. Assur. Corp. v. Liberty Mut. Ins. Co., 260 So.2d 249 (Fla.App. 1972).
The background of this case, including the application for liability insurance coverage, contains no ambiguity or problems of construction and interpretation. In short, the provisions of the application as set forth above reveal that the Miami Revival Center, Inc. sought to cover its church members aboard a Cessna 120 for "limited commercial" purposes. Such purposes specifically include student instruction of church members.
The initial provisions of the insurance policy likewise present little difficulty. We note that there is nothing contained in the record to indicate that Joe W. Lain was not directly supervising the flight when the tragedy occurred or that he was not a certified instructor. Thus a reading of the main policy provisions hereinbefore discussed lead to one inescapable conclusion: Charles Mathews, a student trainee, was aboard an aircraft covered by bodily injury liability insurance in the amount of $100,000 as to his person when the plane crashed and he died.
The ambiguity which does exist and which has occasioned this litigation stems *349 from a single exclusionary provision buried amidst three pages of "Exclusions," "Definitions," and "Conditions" contained in the insurance policy. The District Court of Appeal examined that provision and concluded:
"In short, we see nothing in the plain language of this policy to indicate that any person lawfully aboard the aircraft at the time of the crash was covered." Ranger Insurance Co. v. Mathews, 267 So.2d 867 (Fla.App. 1972), at 870.
We do not agree. That single provision which makes reference to crew or pilots is so incongruous when read with the other terms of the contract as to render the entire agreement ambiguous. Every relevant statement in the application and the policy, except that single fine-print exclusion, is aimed at providing insurance coverage for church members taking flying instructions. To hold that such coverage is not present now would be an absurd result disallowed by any reasonable construction of the policy as dictated by the provisions of F.S. Section 627.419(1), F.S.A. Ambiguity such as we see in this agreement need not exist.
"There is no reason why such policies cannot be phrased so that the average person can clearly understand what he is buying. And so long as these contracts are drawn in such a manner that it requires the proverbial Philadelphia lawyer to comprehend the terms embodied in it, the courts should and will construe them liberally in favor of the insured and strictly against the insurer to protect the buying public who rely upon the companies and agencies in such transactions." Harnett v. Southern Insurance Company, 181 So.2d 524, at 528 (Fla. 1965).
In the case under review the following statement written boldly across the face of the policy would reflect Respondent's interpretation of the provisions contained therein: THE LIABILITY INSURANCE PROVISIONS OF THIS POLICY COVER NO ONE LAWFULLY ABOARD THE AIRCRAFT. What in fact is contained in the policy is a heterogenous exclusionary provision for "crew or pilot" that amounts to a sleight-of-hand withdrawal of coverage following explicit provisions allowing coverage for nonpassengers. The principle is well established that such ambiguity is resolved against the insurer. See Harnett v. Southern Insurance Company, supra; Harris v. Carolina Life Insurance Company, 233 So.2d 833 (Fla. 1970); Daleo v. Berte & Bette Bayfront 66 Marine, 273 So.2d 113 (Fla.App. 1972); Home Insurance Company v. Southport Terminals, Inc., supra. We therefore hold that the underlying intent of the parties as evidenced by the application for insurance together with the policy that was subsequently issued allows coverage under the circumstances of this case.
In granting weight to the provisions of the application, we are cognizant of the general rule allowing the provisions of the policy to govern where conflict exists between the provisions of the application and the policy. See Quick v. National Indemnity Company, supra 231 So.2d at 26, and cases cited therein. However, that general rule is qualified where reliance on the provisions of the application would result in greater indemnity. Joseph Uram Jewelers, Inc. v. Liberty Mut. Fire Ins. Co., supra 273 So.2d at 113; 1 Couch on Insurance 2d, § 15:32, p. 704.
The ambiguity presented by "Exclusion No. 9" of the insurance agreement is not limited to the difficulty of reconciling its meaning with that of the policy taken as a whole. Even if that provision was somehow deemed compatible with the terms of the insurance application and the main provisions of the policy, deceased's position in relation to the term "crew or pilot" presents additional ambiguity. The deceased was a nonpassenger and was therefore insured under the provisions of "Coverage A." In a very real sense he was not a pilot or crewman because he was not responsible *350 for operation of the plane. Therefore, he was not excluded from coverage under exclusion number nine of the policy. It was this line of reasoning which the trial judge relied upon, in part, "to effectuate the purposes of the policy." While this definition of "crew or pilot" with its emphasis on "responsibility" is more narrow than that contained in the definition section of the policy, it is more faithful to the manifest purpose of granting coverage to flight trainees. The difficulty presented in classifying the decedent's position serves to further illustrate the ambiguity present in the entire insurance agreement. For reasons and authority hereinbefore discussed, we are resolving the ambiguity in favor of the Petitioners.
If the contentions of Respondent were to prevail, the result would be the acceptance of liability premiums for the issuance of a policy of insurance that ostensibly purports to insure someone for bodily injury, but when the exclusions are read no one is insured aboard the plane or on the ground.
Accordingly, the decision of the District Court is quashed and the cause is remanded to the District Court with instruction to further remand the same to the Circuit Court for further proceedings not inconsistent herewith.
It is so ordered.
ADKINS, BOYD and McCAIN, JJ., concur.
DEKLE, J., dissents with opinion.
CARLTON, C.J., and ROBERTS, J., dissent and concur with DEKLE, J.
DEKLE, Justice (dissenting):
The policy purchased was simply for third party liability. The "use" identified in the application as "limited commercial ... including Student Instruction" relates to the above described "Liability Coverage" to third parties. This is not the type policy (nor premium) to cover passengers and crew, and it is a travesty for the court to "write" such coverage into an entirely different policy. It's like "writing in" theft coverage in a purely windstorm policy without consideration.
Whatever happened to CONTRACT principles?
I dissent.
CARLTON, C.J., and ROBERTS, J., concur.
NOTES
[1] Pertinent portions of the trial judge's extensive opinion may be found in a footnote at 267 So.2d 869.
[2] This subsection has remained in effect since its enactment as § 627.0118, F.S.