PAN AMERICAN FIRE & CASUALTY
COMPANY, Plaintiff,

v.

EDWARDS AIRCRAFT INCORPORAT-
ED and Sybil D. Roberts as Adminis-
tratrix of the Estate of Larry Roberts,
Deceased, Defendants.

Civ. A. No. 74-P-136-S.

United States District Court,
N. D. Alabama, S. D.

June 17, 1974.

Bibb Allen of London, Yancey, Clark
& Allen, Birmingham, Ala., for plaintiff.

William C. Knight, Jr., of Thomas,
Taliaferro, Forman, Burr & Murray,
Alex W. Newton of Hare, Wynn, Newell
& Newton, Birmingham, Ala., for de-
fendants.

MEMORANDUM OF OPINION

POINTER, District Judge.

In a pending state court action, Ed-
wards Aircraft is alleged to have tor-
tiously caused the death of Larry Rob-
erts. During the flight in which the fa-
tal crash occurred, Roberts, a licensed
private pilot interested in obtaining a
commercial pilot certificate, was receiv-
ing flight instruction from an employee
of, and in a dual control aircraft owned
by, Edwards Aircraft. Pan American,
plaintiff in the diversity action *sub ju-
dice*, seeks a declaration that insurance
issued by it to Edwards Aircraft does

not provide liability coverage or obligation of defense with respect to the wrongful death action brought by Roberts' Administratrix. The defendants herein—the parties to the state court action—take the contrary position; and, with the issue thus drawn, the case has been submitted for decision, primarily on the basis of a stipulation of facts.

By the express terms thereof, the "policy does not apply under Coverage [for bodily injury liability] to * * * death of any person who is a Named Insured or a pilot or crew member;" and "the words 'crew' or 'pilot' mean any person or persons involved in the operation of the aircraft while in flight." [1]

In an effort to render inapplicable the foregoing Exclusion 9, the defendants contend that, as a student pilot, Roberts was neither a crewmember nor a pilot during the fatal flight.[2] Section 1.1 of the FAA regulations, 14 C.F.R., which frequently are utilized by courts in the interpretation of aircraft insurance policies, defines "pilot in command" as the pilot responsible for operation and safety of an aircraft during flight and "crewmember" as a person "assigned" to perform duty during flight time. According to the defendants, the instructor—and not Roberts—should therefore be considered "the" pilot;[3] and, furthermore, Roberts—there being no evidence to show he was "assigned"

duties—should be held not a member of the crew.

The argument, however, fails to note that policy Exclusion 9 is not stated in terms of "the" pilot, or in other words which might connote the pilot in command. Rather, the exclusion affects any person who is "a" pilot; and, indeed, in defining the word "passenger", the policy recognizes that there may be more than one pilot. The FAA regulations not only do not limit the word "pilot" to the "pilot in command", but indeed indicate, in § 61.129(b), that time while receiving flight instruction under the supervision of an instructor is considered time as a pilot. In any event, the policy contains its own definition, a definition that makes the exclusion applicable to all persons "involved in the operation of the aircraft while in flight."

There is no dispute but that Roberts was so involved or, indeed, but that such was the very purpose and aim of the flight.[4] The burden on Pan American is not to show that Roberts was a pilot rather than a crew member, or *vice versa*, but rather that Roberts was one or the other within the definition of the policy; and this it has done.

In any event, say the defendants, an ambiguity exists in that Exclusion 9 is inconsistent with other provisions; namely, the stated uses described in the Declarations and, to a degree, the insur-

1. The word "passenger", which is used in other provisions of the policy and declaration, including Coverage B, is defined as "any person or persons while in * * * the aircraft for the purpose of riding or flying therein * * *, excluding crew or pilots."

2. They presumably would go further and contend that, contrary to the present allegations in the complaint in the wrongful death action, neither was Roberts a fare-paying passenger: otherwise such activity could be contrary to the permitted uses stated in the Declarations and thereby run afoul of Exclusion 4(c).

3. Defendants cite Marshall v. Peerless Insurance Co., 428 S.W.2d 190 (Ky.1968). The question in *Marshall*, a claim for property damage to the plane, was which of two pi-

lots—a licensed pilot or a student pilot—was operating the aircraft. It was not concerned with whether the student would have been considered a pilot under a bodily injury exclusion such as Exclusion 9.

4. It may be that the concept of assignment, as indicated in the regulatory definition of crewmember, might have some significance in the policy. If so, Roberts would nevertheless be considered as possessing "assigned" functions to perform during operation of the aircraft—"assigned" in the sense of an intentionally pre-arranged role to perform during flight. It is unnecessary to speculate whether a guest in an aircraft who, due to an unanticipated emergency, had to take over operation of an aircraft would be subject to the exclusionary language.

ing language of the basic coverage clauses. Item 6 of the Declarations, entitled "Purpose(s) of Use,' provides that the aircraft was to be used for "Limited Commercial" purposes, defined as "including all the uses permitted in (a) and (b) above,[5] and including Student Instruction and Rental to pilots but excluding passenger carrying for hire or reward." With student instruction as an explicitly permitted use, it would be incongruous, according to defendants, to permit the insurer to escape coverage for that very event through an exclusion buried [6] elsewhere in the policy. On virtually identical facts,[7] the Supreme Court of Florida has adopted this reasoning and provided coverage as to the wrongful death action brought on behalf of a student pilot. Mathews v. Ranger Insurance Co., 281 So.2d 345 (Fla.1973), rev'g 267 So.2d 867 (Fla.Dist.Ct.App. 1972).

■■ This court, however, bound to apply the law of Alabama, finds no such conflict or inconsistency between Exclusion 9 and other provisions of the policy or declarations. The provisions are, of course, interrelated; but this is inherent in the very nature of such provisions.

Thus, coverage paragraphs A and B state a general contractural duty by the insurer to pay on behalf of the insured all sums which the insured becomes legally obligated to pay as damages because of bodily injury sustained by any person arising out of use of the aircraft.[8] The effect of the description of permitted uses in the Declarations, taken in conjunction with Exclusion 4(c), is to provide that, without regard to the identity of the persons injured, this duty does not apply where such injuries arise out of certain types of use of the aircraft. The effect of Exclusion 9 is to provide that, without regard to the type of use of the aircraft, the duty does not apply to the claims of injury sustained by certain types of persons. In like manner there are other exclusions, not here pertinent, which have the effect of providing that, without regard to the type of use or the type of person injured, the duty does not apply, *inter alia,* to certain types of insureds and to certain types of legal obligations incurred by an insured.

The point is that Exclusion 9, which is not facially inconsistent with any other relevant portion of the policy, has its

---

5. Purpose (a), "Pleasure and Business," is defined as "Personal and Pleasure use and use in direct connection with the Insured's business, excluding any operation for which a charge is made." Purpose (b), "Industrial Aid," is defined as "including the uses enumerated in the definition of 'Pleasure and Business' and also includes transportation of executives, employees, guests and customers, excluding any operation for which a charge is made."

6. The Florida Supreme Court in *Mathews* seems to place some importance to the notion that the exclusion was in "fine-print." Whatever may have been true with the Ranger policy there involved, the Pan American policy here in issue utilizes essentially the same size and type print for the exclusions as for the coverage paragraphs and for the declarations.

7. The policy in *Mathews* provided bodily injury coverage only under Coverage A, which excluded passengers. Had the special exclusion of injury to pilots and crew been permitted, the policy would have, according to the Florida Supreme Court, covered no one

lawfully aboard the aircraft. In the policy *sub judice* both Coverages A and B are provided, thereby affording coverage in favor of passengers, subject to the potential defense, if the aircraft were being used for passenger carrying for hire or reward, that it was being used for an impermissible purpose violative of Exclusion 4(c). With one of the planes covered under the Pan American policy, "Commercial" use was listed as the intended purpose, which would have made passenger carrying for hire or reward a permissible use. In any event the distinction from the *Mathews* case is one of degree only; and, were this case decided under Florida law, this court would consider *Mathews* controlling.

8. As is typical, the insurer's duty under the policy to provide legal defense of the wrongful death action depends upon whether it will be responsible for payment of damages which may therein be awarded. Accordingly, it is unnecessary in this opinion to treat separately the issue as to the obligation of defense.

own role to play in defining, along with the other provisions, the contractual responsibilities of the insurer. Nor does the exclusion of claims made on behalf of injured student pilots make meaningless a liability policy issued to a company permitted thereunder to offer flight instruction: it protects Edwards Aircraft, its employees, and some student pilots [9] against liability for bodily injury to persons outside the aircraft, as well as to passengers in the aircraft.[10] By indicating in the Declarations the expected use for student instruction, Edwards Aircraft preserved coverage for such potential liability during instructional flights and presumably also—though this is not before the court—would thereby be entitled under the facts of this very case to reimbursement for property damage to the aircraft itself under Coverage G. It may not have received coverage for all risks it presumed it was getting [11]—indeed, it may,

for example, have thought it was covered on claims against it on behalf of persons piloting aircraft in other circumstances—but this does not mean Edwards Aircraft received a nullity of a policy.

In analogous situations the Alabama Supreme Court, while recognizing that other states have held to the contrary, has approved clauses which exclude the claims of certain types of injured persons from coverage under a liability policy.[12] Michigan Mutual Liability Co. v. Carroll, 271 Ala. 404, 123 So.2d 920 (1960) (excluding bodily injury to employees of insured covered by workmen's compensation laws); Hogg v. State Farm Mutual Automobile Ins. Co., 276 Ala. 366, 162 So.2d 462 (1964) (excluding bodily injury to member of family of insured); Kilby Car & Foundry Co. v. Georgia Casualty Co., 209 Ala. 356, 96 So. 319 (1923) (excluding bodily injury to child employed in violation of

9. While Insuring Agreement III(c) apparently excludes coverage as to claims made against a student pilot, Endorsements 6 and 10 modify such exclusion by designating R.O.T.C. cadets as additional insureds. It may be noted that these endorsements could present their own problems: paragraph 3 of such endorsement—"the insurance afforded by this Policy for more than one Insured shall not operate to increase the Limits of the Company's Liability, but otherwise shall not operate to limit or void the coverage of any one Insured as respects claims against the Insured by any other Insured or the employees of such other Insured"—might well be considered as inconsistent with Exclusion 9 where such cadets sustain injury during instructional flights. There is no suggestion in the case *sub judice* that Roberts was such a cadet; and, accordingly, the question need not here be answered. However, it does illustrate a situation in which a potentially meritorious argument might be made that an exclusion is inconsistent with other language.

10. Coverage B provides coverage for claims of bodily injury to passengers without regard to whether such persons are fare-paying or not. By showing for the aircraft involved in this accident the "Limited Commercial" use—rather than "Commercial", the use shown for another of the planes covered by the policy—Edwards Aircraft may, however, regarding this plane have limited its coverage to flights in which passengers

were not being transported for hire or reward. See footnotes 2 and 7 *supra*.

11. The defendants were conditionally allowed to introduce oral testimony regarding a conversation between Edwards' principal officer and the insurance broker. Even if such testimony were admissible under an exception to the parol evidence rule, it would not significantly add to the defendants' position. The conversation related not to the issuance of the Pan American policy here in dispute, but to an earlier policy from a different company. Moreover, the conversation related not to whether claims by student pilots would be covered, but whether there would be coverage during student flights. As indicated in the opinion, there is, in a significant way, coverage—that is, respecting claims against Edwards Aircraft made by passengers and by persons outside the aircraft and respecting property damage claims—during instructional flights. In retrospect, one may assume that this coverage did not satisfy the unexpressed needs of Edwards Aircraft; but such a conclusion would not justify a court in creating coverage not provided by the policy. Nor is there any claim in this case for modification of the policy.

12. By like token Alabama has also applied a clause which excluded claims as to certain types of use of the covered vehicle. Alabama Farm Bureau Mutual Casualty Co. v. Goodman, 279 Ala. 538, 188 So.2d 268 (1966) (use in competitive speed test).

age laws). Accord, Ward v. State Farm Mutual Automobile Ins. Co., 241 F.2d 134 (CA5 1957) (applying law of Alabama regarding exclusion of injuries to employees of insured covered by workmen's compensation laws).

For applications under laws of other states of this general principle to aircraft liability policies, see Travelers Ins. Co. v. Warner, 169 Colo. 391, 456 P.2d 732 (1969) (exclusion for members of crew); Eagle Star Ins. Co. v. Deal, 474 F.2d 1216 (CA8 1973) (exclusion for employees of insured); Coffin v. Insurance Co. of North America, 429 F.2d 1312 (CA5 1970) (no coverage for passengers; unclear whether the result of an exclusion clause or language of coverage clause). *Cf.* Curtis v. American Casualty Co., 60 Tenn.App. 204, 445 S. W.2d 661 (1968) (coverage only for passengers; statute defining passengers).

This court concludes that, to be consistent with its other decisions,[13] the Alabama Supreme Court would have to uphold the integrity of Exclusion 9 in the Pan American policy as against the contentions made by defendants. In answer to the incisive question posed by Justice Dekle in the dissenting opinion in *Mathews*—"whatever happened to Contract principles?"[14]—they are alive and doing well in Alabama. Apparently also in California where in an unreported decision, Ranger Insurance Co. v. Nichols, Calif.Superior Ct. #98374, Jan. 10, 1973, an identical Exclusion 9 was held to preclude coverage of death claims on

behalf of an instructor pilot and a student pilot.

Judgment by separate order is entered concurrently herewith in favor of Pan American.

---

13. This is not a case in which state statutes would prohibit an exclusion for a particular class of injured persons. *Cf.* State Farm Automobile Ins. Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974) (uninsured motorist statute voided exclusion for claims of injury to family members who were insured under other provisions of policy). The Alabama cases cited in defendants' brief—*i. e.*, Smith v. Kennesaw Life & Accident Ins. Co., 284 Ala. 12, 221 So.2d 372 (1969); Southern Guaranty Ins. Co. v. Wales, 283 Ala. 493, 218 So.2d 822 (1969); North River Ins. Co. v. Jackson, 278 Ala. 604, 179 So.2d 731 (1965)—while standing in the abstract for the principle espoused by defendants illustrate that the Alabama courts uphold un-

ambiguous policy provisions even when the result is to deny coverage.

14. 281 So.2d at 350. No doubt the six appellate judges in *Mathews* who would have denied coverage, three on the Supreme Court and three on the District Court of Appeals, were also mystified as to how a student pilot, if held not a pilot or crewmember, could be other than a passenger under the definitions of the policy, a policy which did not provide insurance to passengers. The difficulty confessed by the majority opinion in explaining this anomaly was, rather curiously, utilized by the majority as a basis for considering the policy ambiguous.