[No. A037537. First Dist., Div. One. Dec. 22, 1988.]

TERESA A. CASTRO, Plaintiff and Appellant, v.
FIREMAN'S FUND AMERICAN LIFE INSURANCE COMPANY,
Defendant and Respondent.

COUNSEL

Freitas, McCarthy, Bettini, MacMahon, Freitas & Keating, David P. Freitas, Dane J. Durham and Albert P. Barsocchini for Plaintiff and Appellant.

Adams, Duque & Hazeltine, Robert D. Phillips, Jr., Corinne Chandler and Luanne Sacks for Defendant and Respondent.

OPINION

RACANELLI, P. J.—In this case, we consider the interpretation of an aviation exclusion clause in a life insurance policy.

FACTS

Shortly after 11 a.m. on December 16, 1984, Joseph Castro died in a small plane crash near Petaluma. Castro had been taking flying lessons since August 1984 from Vindar Aviation in Marin County and was scheduled to receive flight instruction from 9 to 11 a.m. on the day of the accident. Prior to that time, Castro, who had not yet qualified for a student pilot certificate, had logged about 15 hours of in-flight instruction and had completed lesson number seven in the FAA-approved syllabus. During the

fatal flight, he was scheduled to fly the plane, a Cessna 152, 80 percent to 90 percent of the time.

The Cessna crashed outside the boundaries of the normal student training area. Witnesses observed the Cessna before the crash performing various aerobatic maneuvers—loops, spins, stalls and rolls. After the crash, Castro's body was found in the left seat, the customary pilot seat; the body of Robert Lecky, the instructor pilot, was found in the right (instructor) seat. Analysis of a blood specimen taken from Lecky's body revealed a blood-alcohol level of .21 percent.

During the summer of 1984, Castro had taken out a life insurance policy with defendant Fireman's Fund American Life Insurance Company, now known as AMEX Life Assurance Company. The issued policy contained the following exclusion: "AVIATION LIMITATION: The Policy does not provide insurance under the above Death Benefit if a Covered Person dies as a result of flying as a pilot or crew member of any aircraft, except while flying in a regularly scheduled commercial aircraft." When plaintiff Teresa Castro, wife of decedent, submitted a claim for the $100,000 death benefits due under the policy, defendant denied the claim on the basis of the exclusion. Thereafter, plaintiff filed the underlying action for breach of contract and bad faith denial of her insurance claim.

### PROCEDURAL HISTORY

In August 1986, both parties filed motions for summary judgment or summary adjudication of issues. The trial court initially ruled in plaintiff's favor concluding that in the factual context presented, the term "pilot" in the aviation limitation clause was ambiguous.[1] However, upon later reconsideration, the court clarified its ruling indicating it did not intend to find the exclusion clause ambiguous on its face "but only as it applied to this training pilot situation." The final order as filed stated: "Plaintiff's proposed finding No. 10 that the exclusion clause is ambiguous as a matter of law is rejected, the Court being of the opinion that whether the clause is ambiguous as applied to what is found to be the facts is a jury determination."

Thereafter, the issue of coverage liability was bifurcated for trial before a jury. Plaintiff's written offers of proof as to the meaning of the exclusion language were rejected by the court. At the close of plaintiff's case in chief, the trial court granted defendant's motion for a directed verdict. The court

---

[1] The court stated in relevant part: "so it's clear to me, if I'm just going up there and you are going to teach me to fly and you are the pilot, that I don't come within that exclusion. [¶] So that would be the Court's initial ruling."

concluded that the term "pilot," as interpreted in its plain and ordinary sense, means " 'one who handles or is qualified to handle the controls of an aircraft' "; that Castro was on board the aircraft as a pilot and died as a result of flying as a pilot, within the meaning of the aviation limitation of the policy; and further, that the language excluding coverage was neither unclear nor ambiguous on its face or as applied.

Plaintiff now appeals from the judgment entered on the directed verdict in favor of defendant AMEX Life.[2]

## DISCUSSION

The sole question for determination is whether the order granting a directed verdict was proper. Plaintiff argues the trial court initially erred in failing to find the aviation exclusion clause ambiguous as a matter of law. Plaintiff also challenges the propriety of the directed verdict contending that the pivotal question whether decedent was a pilot or crew member at the time of the accident was a factual issue for the jury to determine. For reasons we explain, we conclude the trial court erred in failing to grant summary adjudication to plaintiff as a matter of law on the issue of coverage. In light of such circumstances, the entry of the directed verdict was improper.

As noted, under the provisions of the aviation limitation clause, coverage is excluded if the insured dies "as a result of flying as a pilot or crew member of any aircraft . . ."[3] The intended meaning of the exclusionary language lies at the center of the controversy.

The Supreme Court recently summarized well established rules applicable to construction of insurance policy language: "It is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect his *reasonable* expectation of coverage. (*Insurance Co. of North America* v. *Sam Harris Constr. Co.* (1978) 22 Cal.3d 409, 412-413 [149 Cal.Rptr. 292, 583 P.2d 1335]; *Gray* v. *Zurich*

---

[2] Summary judgment had earlier been granted to defendant American Express Travel Related Services Company, Inc., and it is not a party to this appeal.

[3] In another section of the policy, not applicable here, entitled "Out of the Country Accidental Death Provisions," the exclusion is virtually repeated: "The Policy does not insure . . . any loss which results from injury which is caused or contributed to by, or sustained as a consequence of:

" . . . . . . . . . . . . . . . . . .

" . . . flying as a pilot or crew member of any aircraft, except while flying in a regularly scheduled commercial aircraft."

*Insurance Co., supra,* 65 Cal.2d [263] at pp. 269, 270, fn. 7 [54 Cal.Rptr. 140, 419 P.2d 168].) It is also well established, however, that this rule of construction is applicable only when the policy language is found to be unclear. (*Gray, supra,* at p. 271; *Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 328 [183 Cal.Rptr. 695]; *Safeco Title Ins. Co.* v. *Moskopoulos* (1981) 116 Cal.App.3d 658, 665 [172 Cal.Rptr. 248, 18 A.L.R.4th 1301].) ' "A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable." [Citation.]' (*Delgado* v. *Heritage Life Ins. Co.* (1984) 157 Cal.App.3d 262, 271 [203 Cal.Rptr. 672].) Whether language in a contract is ambiguous is a question of law. (*Id.* at p. 270.) We are also guided by the principle that words in an insurance policy must be read in their ordinary sense, and any ambiguity cannot be based on a strained interpretation of the policy language. (*McKee* v. *State Farm Fire & Cas. Co.* (1983) 145 Cal.App.3d 772, 776 [193 Cal.Rptr. 745].)" (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].)

■ The rules governing interpretation of the terms of a policy exclusion are even more trenchant. Any limitation on coverage or any exclusion in the policy must be clearly stated in order to apprise the insured of such limitations. (*State Farm Mut. Auto. Ins. Co.* v. *Jacober* (1973) 10 Cal.3d 193, 202 [110 Cal.Rptr. 1, 514 P.2d 953].) Further, any exclusion is strictly interpreted against the insurer. (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 101-102 [109 Cal.Rptr. 811, 514 P.2d 123].)

■ An ambiguity may appear either on the face of the policy or when a provision is applied to a particular claim for benefits. (*Rullman* v. *State Farm Mut. Automobile Ins. Co.* (1970) 8 Cal.App.3d 606, 609 [87 Cal.Rptr. 551].) ■ The construction of an insurance policy, including whether an ambiguity exists, represent questions of law. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* at p. 912.) ■ However, it is not the function of the court to determine which of several reasonable constructions of an ambiguous provision is the correct one. "[F]or under settled principles so long as coverage is available under any reasonable interpretation of an ambiguous clause, the insurer cannot escape liability." (*State Farm Mut. Auto. Ins. Co.* v. *Jacober, supra,* 10 Cal.3d at pp. 197, 202-203.)

" 'It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. . . . [I]f the doubt relates to extent or fact of coverage, whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], the language will be understood in its most inclusive sense, for the benefit of the insured.' (*Continental Cas. Co.* v. *Phoenix*

*Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914].)" (*Insurance Co. of North America v. Sam Harris Constr. Co.* (1978) 22 Cal.3d 409, 412-413 [149 Cal.Rptr. 292, 583 P.2d 1335].)

In *Producers Dairy,* the Supreme Court described the first task in reviewing an insurance policy for alleged ambiguity as an inquiry into whether the policy was "reasonably susceptible of a construction other than that found by the trial court." (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co., supra,* at p. 912.) ■ Here, the trial court used a standard dictionary definition of pilot ("one who handles or is qualified to handle the controls of an aircraft") to interpret the policy limitation in a manner excluding coverage.

Plaintiff argues that in the situation of a "student pilot," the language of the provision is ambiguous in several respects: Is a "student pilot" a pilot, or a student, or a crew member? What is the meaning of the transitive clause "dies as a result of flying" in the context used?[4]

Plaintiff argues that because other courts have found similar exclusions to be ambiguous, and some uncertainty is shown herein whether a student pilot would be automatically excluded under the policy language, therefore more than one reasonable interpretation must exist. We fail to see the logic of the argument as presented.

■ Disagreement concerning the meaning of a phrase does not automatically make the policy ambiguous.[5] "Ambiguity is not necessarily to be found in the fact that a word or phrase isolated from its context is susceptible of more than one meaning." (*Ayres* v. *Prudential Ins. Co. of America* (9th Cir. 1979) 602 F.2d 1309, 1311.) "[N]either the mere absence of a policy definition nor the presence of a dispute as to the meaning of the provision necessarily renders it ambiguous as a matter of law." (*Keyser* v. *Connecticut General Life Ins. Co.* (N.D.Ill. 1985) 617 F.Supp. 1406, 1410.)

---

[4] Logically, the active term "flying" could describe a condition of status ("airborne") as well as a condition of activity ("operating or controlling").

[5] In fact, in *Civil Service Employees Ins. Co.* v. *Klapper* (1976) 59 Cal.App.3d 918 [130 Cal.Rptr. 921], this court held that a specific clause in an automobile insurance liability policy was not ambiguous in the case before it, when earlier the Supreme Court had found one phrase of the same clause to be ambiguous in light of a different factual situation. And in *Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324 [183 Cal.Rptr. 695], the court held the term "accident" in an insurance policy was not ambiguous, whereas an earlier California decision reached a contrary conclusion. (*Sylla* v. *United States Fid. & Guar. Co.* (1976) 54 Cal.App.3d 895 [127 Cal.Rptr. 38].)

Plaintiff relies on decisions in other jurisdictions where, it is claimed, similar aviation exclusions were found ambiguous, e.g., *Mathews* v. *Ranger Insurance Company* (Fla. 1973) 281 So.2d 345 and *Foremost Ins. Co.* v. *Sheppard* (8th Cir. 1979) 610 F.2d 551. Having reviewed the authorities cited, we think plaintiff's reliance is misplaced. The cases cited dealt with liability policies purchased by private aircraft companies and turned on conflicting policy provisions expressly covering student pilots and excluding pilots or crew members defined as those responsible for the operation of the aircraft. Thus, the suggested analogy is nonexistent.

■■ However, our analysis of the aviation limitation before us raises more doubt rather than certainty whether a person undertaking student flying lessons falls within the excluded class. It is certainly arguable, as defendant contends, that a student pilot is simply a category of pilot. But it seems equally tenable that the descriptive classification of "student" might well apply only to the status of novice or learner since a student pilot is neither qualified nor licensed to perform the same tasks as a certified pilot. It is undisputed that decedent had not acquired either his student pilot certificate or the requisite medical certificate.

■■ Defendant presents the alternative argument that even if it is unclear whether decedent was a pilot within the exclusion, he certainly could be considered a crew member. In *Travelers Insurance Company* v. *Warner* (1969) 169 Colo. 391 [456 P.2d 732], the court found that a person performing *some* pilot activity was at least a member of the crew, which it defined as two or more persons associated together for the purpose of operating an aircraft between different points or during a certain time interval. However, at least one recognized authority in the field has concluded that "the word 'crew' is ambiguous and should be construed against the insurer." (1C Appleman, Insurance Law and Practice (rev. ed. 1981) § 602, p. 113.) We think it is just as reasonable to interpret the class term of "crew member" to mean someone who has official duties in relation to the aircraft rather than a fee-paying student.

In those cases where courts have found aviation limitation clauses to be unambiguous, the language of exclusion is carefully expressed and the operative terms clearly defined.

Thus, in *Walker* v. *Imperial Cas. & Indem. Co.* (1977) 1 Kan.App.2d 349 [564 P.2d 588], one of the few cases involving the death of a student pilot,

the court upheld a judgment for the insurer under a policy providing coverage while the insured "is riding as a passenger (and not as an operator)." In denying coverage, the trial court found the insured student pilot was not riding as a passenger; the appellate court agreed concluding that a student pilot was an "operator" within the intended meaning of the policy language. (See also *Pan American Fire & Cas. Co.* v. *Edwards Aircraft Inc.* (N.D.Ala. 1974) 377 F.Supp. 205 [licensed pilot receiving commercial instruction as "student" pilot excluded under policy language defining crew or pilot to mean any person involved in the operation of the aircraft while in flight]; *Ranger Ins. Co.* v. *Ram Flying Club* (Colo.App. 1982) 653 P.2d 65 [virtually identical language and result]; *Keyser* v. *Connecticut General Life Ins. Co., supra,* 617 F.Supp. 1406 [life insurance exclusion where insured is a pilot or crew member or while aircraft is operated for aviation training or experimental purpose]; and cf. *Beckwith* v. *American Home Assur. Co.* (W.D.N.C. 1983) 565 F.Supp. 458 [insured covered while riding as a passenger (but not as a pilot, operator or member of the crew)].)

 We are impelled to conclude that an insurer in such a contract, as here, where the parties have unequal bargaining power, is ultimately responsible for the policy language and for clearly and explicitly excluding uncovered risks. (See *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) Obviously, it would seem a relatively simple matter for the insurer to have written its aviation limitation expressly to exclude coverage for student pilots or trainee pilots as well as pilots or crew members in the commonly understood meanings of those terms.

Under the applicable principles reviewed, the patent ambiguity inherent in the policy language of exclusion requires that the doubt be resolved in favor of the insured. (*Insurance Co. of North America* v. *Sam Harris Constr. Co., supra,* 22 Cal.3d at pp. 412-413; *State Farm Mut. Auto. Ins. Co.* v. *Jacober, supra,* 10 Cal.3d at pp. 197, 202-203; accord *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 881 [221 Cal.Rptr. 509, 710 P.2d 309].) Accordingly, the granting of a directed verdict on the issue of liability was erroneous.

In view of our determination, it is unnecessary to discuss plaintiff's remaining arguments.

The judgment and order appealed from, and each, is reversed with directions to enter an order granting summary adjudication in favor of plaintiff on the issue of coverage liability, and the matter is remanded for further appropriate proceedings.[6] Costs to appellant.

Newsom, J., and Holmdahl, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 29, 1989.

---

[6]The court has disregarded all unsupported statements or misused evidence in both parties' briefs. (Cal. Rules of Court, rule 18.) Accordingly, defendants' motion to strike is denied.